IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EDWIN P. WILSON,          §

        Plaintiff,       §

v.                    §

LAWRENCE BARCELLA, CHARLES A.   §
BRIGGS, THEODORE S. GREENBERG,   §       CIVIL ACTION NO.
STEPHEN TROTT, DELWYN LOWELL   §          H-05-3646
JENSEN, MARK M RICHARD, JAMES L.   §
POWERS, DANIEL K. HEDGES, JANE   §
and JOHN DOES I-XX,         §

        Defendants.     §

                   §

**APPENDIX TO PLAINTIFF EDWIN P. WILSON'S CONSOLIDATED
RESPONSE TO DEFENDANTS BARCELLA, BRIGGS, GREENBERG, HEDGES AND
POWERS, JENSEN, RICHARD, AND TROTT'S MOTIONS TO DISMISS**

**Cases**

1.    *Cannon v. Burge,*
        2006 U.S. Dist. Lexis 4040 (N.D. Ill. 2006)

2.    *Carney v. United States,*
        2004 U.S. Dist. Lexis 10617 (N.D. Tex. June 9, 2004)

3.    *Davis v. King,*
        2000 U.S. Dist. Lexis 5366 (N.D. Tex. Apr. 24, 2000)

4.    *Evans v. City of Chicago,*
        2005 U.S. Dist. Lexis 18507 (N.D. Ill. Aug. 29, 2005)

5.    *Franklin v. Fox,*
        2000 U.S. Dist. Lexis 19651 (N.D. Cal. Dec. 22, 2000)

6.    *Gregory v. City of Louisville,*
        2006 U.S. App. Lexis 8792 (6th Cir. Apr. 11, 2006)

7.    *Holleman v. McKee,*
        2006 U.S. Dist. Lexis 3405 (S.D. Tex. Jan. 17, 2006)

8.   *Metoyer v. Connick*,
         2000 U.S. Dist. Lexis 9470 (E.D. La. June 26, 2000)

9.   *Pierce v. Pawelski*,
         2000 U.S. Dist. Lexis 18229 (N.D. Ill. Dec. 11, 2000)

10.  *Smith v. Department of Human Servs.*,
         2000 U.S. App. Lexis 25016 (10th Cir. Oct. 6, 2000)

11.  *Steeves v. McGrath*,
         2000 U.S. Dist. Lexis 1706 (N.D. Ill. Feb. 11, 2000)

12.  *Strong v. City of Dallas*,
         2002 U.S. Dist. Lexis 840 (N.D. Tex. Jan. 17, 2002)

13.  *Thompson v. Connick*,
         2005 U.S. Dist. Lexis 36499 (E.D. La. Nov. 15, 2005)

14.  *Truvia v. Julien*,
         2005 U.S. Dist. Lexis 539 (E.D. La. Jan. 11, 2005)

15.  *Truvia v. Julien*,
         No. 04-0680 (E.D. La. Sept. 24, 2004)

16.  *United States v. Wilson*,
         1996 U.S. App. Lexis 2538 (4th Cir. Feb. 7, 1996)

17.  *Waugh v. Curtis*,
         1993 U.S. App. Lexis 1472 (9th Cir. 1993)

18.  *Wilson v. United States*,
         Criminal No. 1:82CR212 (E.D. Va. Mar. 9, 2006)

606074-11 112571 V1

# Exhibit 1

LEXSEE

**DARRELL CANNON, Plaintiff, v. FORMER CHICAGO POLICE LT. JON BURGE, et al., Defendants.**

No. 05 C 2192

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

2006 U.S. Dist. LEXIS 4040

February 2, 2006, Decided

**CORE TERMS:** torture, conspiracy, state law, false arrest, motion to dismiss, causes of action, waived, false imprisonment, reply, conspiracy claim, interrogation, suppressed, malicious prosecution, fair trial, intra-corporate, detective, undeveloped, deprivation, perfunctory, tortured, exclusive jurisdiction, exculpatory evidence, indemnification, individually, prosecutors, sentence, malicious prosecution claim, collateral estoppel, confession, intentional infliction of emotional distress

**COUNSEL:** [*1] For Darrell Cannon, Plaintiff: Locke E. Bowman, III, MacArthur Justice Center, Chicago, IL; Benjamin H. Elson, People's Law Office, Chicago, IL US; G. Flint Taylor, Jr., Joey L. Mogul, Peoples's Law Offices, Chicago, IL.

For Jon Burge, Former Chicago Police Lt., John Byrne, former Police Sergeant, Peter Dignan, former CPD detective, Michael Bosco, former CPD detective, Daniel McWeeny, former CPD detective, Ray Binkowski, former CPD detective, Ray Madigan, former CPD detective, Defendants: James Gus Sotos, Elizabeth A Ekl, James G. Sotos & Associates, Ltd., Itasca, IL.

For Richard Devine, States Attorney, Cook County Illinois, Cook County State's Attorney's Office, Defendants: Stephen L. Garcia, Patrick T. Driscoll, Jr., Paul Anthony Castiglione, Cook County State's Attorney, Chicago, IL.

For Terry Hillard, former Chicago Police Superintendent, Thomas Needham, aide to the Superintendent, City Of Chicago, Defendants: Terrence Michael Burns, Paul A. Michalik, Dykema Gossett Rooks Pitts PLLC, Chicago, IL; Daniel Matthew Noland, Harry N. Arger, Dykema Gossett PLLC, Chicago, IL.

For Leroy Martin, former Chicago Police Superintendent, Defendant: Eileen Marie Letts, Kevin [*2] Thomas

Lee, Martin Peter Greene, Terry Miller, Greene & Letts, Chicago, IL.

**JUDGES:** AMY J. ST. EVE, United States District Court Judge.

**OPINIONBY:** AMY J. ST. EVE

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Darrell Canon asserts twelve causes of action against multiple Defendants alleging various constitutional and state law violations resulting from or related to the torture he allegedly endured on November 2, 1983. Cannon brings this suit against Jon Burge, John Byrne, Peter Dignan, Michael Bosco, Ray Binkowski, Ray Madigan, Daniel McWeeny, Leroy Martin, Terry Hillard, Thomas Needham, Gayle Shines, the City of Chicago (collectively, the "City Defendants") n1, Richard Devine, the Cook County State's Attorney's Office, and Cook County (collectively, the "County Defendants"). Plaintiff asserts the following six civil rights violations under 42 U.S.C. § 1983: deprivation of the right to a fair trial and wrongful conviction (Count I), false arrest and false imprisonment (Count II), torture and physical abuse (Count III), coercive interrogation (Count IV), due process violation for deprivation of access to courts (Count [*3] V), and a *Monell* policy claim (Count VI). Plaintiff also asserts the following six state law violations: false arrest and imprisonment (Count VII), malicious prosecution (Count VIII), intentional infliction of emotional distress (Count IX), conspiracy (Count X), *respondeat superior* (Count XI), and an indemnification claim pursuant to 745 ILCS 10/9-102 (West 2005) (Count XII). The City and County Defendants both move to dismiss the complaint Canon filed on

April 13, 2005 (the "Complaint"). For the reasons set forth below, the Court grants in part and denies in part the City Defendants' motion to dismiss, and the Court grants in part and denies in part the County Defendants' motion to dismiss.

---

n1 Canon also sues the Estate of Charles Grunhard. Charles Grunhard was a Chicago Police Detective assigned to the Detective Division at Area 2 Violent Crimes Unit. (R. 1-1; Compl. at P 6.) His commanding officer was Jon Burge and his supervisor was John Byrne. (*Id.* at PP 14-5.) The Estate of Charles Grunhard, however, does not join the City Defendants' motion to dismiss. Accordingly, the Court does not refer to the Estate of Charles Grunhard as one of the City Defendants.

[*4]

## BACKGROUND

### I. The Parties

#### A. Plaintiff

Plaintiff Darrell Cannon ("Plaintiff") is a United States citizen. (R. 1-1; Compl. at P 3.)

#### B. The City Defendants

Defendant John Burge ("Burge") was a Chicago Police Lieutenant and the commanding officer of the Chicago Police Area 2 Detective Violent Crimes Unit. (*Id.* at P 4.) Burge served as the commanding officer of Defendants John Byrne, Peter Dignan, Charles Grunhard, Michael Bosco, Ray Madigan, and Daniel McWeeny. (*Id.*) In 1988, Leroy Martin promoted Burge to the position of Commander of Area 3 Detective Division. (*Id.*) According to Plaintiff, Burge held this position until 1991, when the Chicago Police Department fired him for the torture and abuse of Andrew Wilson. (*Id.*) Plaintiff alleges that Burge both "engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives." (*Id.*) Defendant John Byrne ("Byrne") was Chicago Police Sergeant in the Chicago Police Area 2 Detective Violent Crimes Unit. (*Id.* at P 5.) Byrne was the supervisor of Peter Dignan, Charles [*5] Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny. (*Id.*) Plaintiff alleges that Byrne also engaged in and encouraged others to engage in the practice of torture and brutality. (*Id.*) Defendants Peter Dignan ("Dignan"), Charles Grunhard ("Grunhard"), Michael Bosco ("Bosco"), Ray Madigan ("Madigan"), Ray Binkowski ("Binkowski"), and Daniel McWeeny ("McWeeny")

(collectively, the "Defendant Officers") were Chicago Police Detectives in the Detective Division at Area 2 Violent Crimes Unit who allegedly engaged in a pattern and practice of torture and brutality. n2 (*Id.* at P 6.)

---

n2 Although Plaintiff does not set forth Binkowski's job description in the section of the Complaint labeled "Parties," the case caption on the Complaint indicates that Binkowski is a Chicago Police Detective.

Defendant Leroy Martin ("Martin") was the Superintendent of Police for the City of Chicago between 1987 and 1992. (*Id.* at P 7.) In 1983, Martin was Commander of the Area 2 Detective Division, Burge's [*6] direct supervisor, and Byrne's and the Defendant Officers' command supervisor. (*Id.*) Defendant Terry Hillard ("Hillard") was the Superintendent of Police for the City of Chicago between 1998 and 2004. (*Id.* at P 8.) Hillard was also Thomas Needham's direct supervisor. (*Id.* at P 9.) Defendant Thomas Needham ("Needham") was counsel to and administrative assistant for Hillard between 1998 and 2002. (*Id.*) Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department from 1990 to 1998. (*Id.* at P 10.) Defendant City of Chicago (the "City") is an Illinois municipal corporation and is and/or was the employer of Burge, Byrne, the Defendant Officers, Martin, Hillard, Needham, and Shines. (*Id.* at P 11.)

#### C. The County Defendants

Defendant Richard Devine ("Devine") was counsel to the City of Chicago and represented Burge from 1988 to 1996. (*Id.* at P 51, 53.) As counsel for Burge, Plaintiff alleges that Devine received evidence that Burge tortured suspects. (*Id.* at P 53.) In 1997, Devine became the State's Attorney of Cook County, a position he currently holds. (*Id.* at P 12.) Plaintiff alleges that after [*7] becoming the State's Attorney of Cook County, Devine: (1) made false public statements discrediting evidence of torture; (2) refused to investigate allegations regarding Area 2 and Area 3 detectives' use of torture and abuse; (3) suppressed evidence of torture, including evidence of Plaintiff's torture; and (4) used his position to maintain the wrongful conviction and imprisonment of Plaintiff and other victims of torture. (*Id.* at P54.)

Defendant Cook County (the "County") is a governmental entity within the State of Illinois. (*Id.* at P 13.) Defendant Cook County State's Attorney's Office is a part of Cook County and it, along with the County, employ Devine. (*Id.*)

### II. Plaintiff's Allegations

### A. Plaintiff's Underlying Arrest, Interrogation, Confession, and Prosecution

On or about October 26, 1983, A.D. McChristian shot and killed Darrin Ross. (*Id.* at P 15.) The Area 2 Violent Crimes Unit, under the supervision and control of Burge and Byrne and with the participation of the Defendant Officers, investigated the homicide. (*Id.*) According to Plaintiff, Burge and Byrne directed McWeeny and Madigan to threaten and coerce A.D. McChristian's brother, [*8] Tyrone McChristian, to falsely implicate Plaintiff as an accomplice to the Ross homicide. (*Id.* at P 16.) McWeeny included Tyrone McChristian's statement in a police report. (*Id.* at P 17.) Plaintiff alleges that on the morning of November 2, 1983, Byrne, Dignan, Bosco, and Binkowski, together with three other Area 2 detectives, went to an apartment on the south side of Chicago and arrested Plaintiff without probable cause. (*Id.* at P 18.) During the arrest, Byrne used profanity towards Plaintiff and his fiance and pointed guns at their heads, and Grunhard assaulted Plaintiff with a crowbar. (*Id.* at P 19.)

Following Plaintiff's arrest, Dignan, Byrne and Grunhard drove Plaintiff to the area of 80th and Phillips Streets. (*Id.* at P 20.) During the ride, Plaintiff alleges that Dignan said, among other things, "nigger, where's A.D.," and hit Plaintiff on his knee with a flashlight. (*Id.*) Next, they took Plaintiff to an interrogation room at Area 2, suggested inculpatory answers, showed Plaintiff an electrical cattle prod, and told him "nigger, you going to tell us where A.D.'s at," among other things. (*Id.* at P 21.) Byrne, Dignan and Grunhard then took Plaintiff [*9] to a remote area by 103rd and Torrence Streets, while Bosco and Binkowski followed. (*Id.* at P 22.) At that location, Byrne, Dignan and Grunhard took Plaintiff out of the car and questioned him about the Ross homicide and A.D. McChristian's whereabouts. (*Id.* at P 23.) According to Plaintiff, Byrne, Dignan and Grunhard then subjected him to the following forms of torture: (1) performed mock executions by placing a gun in his mouth and pulling the trigger; (2) attempted to suspend Plaintiff in the air while he was handcuffed; and (3) used an electric cattle prod on Plaintiff. (*Id.* at PP 24-28.) Throughout the torture, Byrne, Dignan and Grunhard continued to interrogate Plaintiff about the Ross homicide. (*Id.*) Plaintiff alleges that as a result of the torture, he gave a false and coerced statement to McWeeny and later to the assistant state's attorney, implicating himself as an accomplice to the Ross homicide. (*Id.* at PP 31, 32.)

Plaintiff alleges that his coerced confession served as evidence throughout his prosecution. (*Id.* at P 35.) Additionally, Byrne, Dignan, Grunhard, Bosco, Binkowski, McWeeny, and two other Area 2 detectives committed perjury at the suppression [*10] hearings and at trial. (*Id.* at P 36.) Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, along with others, allegedly suppressed the fact that Plaintiff's confession was false and the product of a pattern and practice of torture at Area 2, and destroyed the instruments used in the torture. (*Id.* at P 37.) According to Plaintiff, his coerced statement resulted in his 1984 conviction for the murder of Darrin Ross. (*Id.* at P 39.)

### B. Plaintiff's 42 U.S.C. § 1983 Action Against Byrne, Dignan and Grunhard

In 1986, Plaintiff filed a 42 U.S.C. § 1983 action against Defendants Byrne, Dignan and Grunhard alleging violations of Plaintiff's constitutional rights in connection with the alleged excessive force used against Plaintiff on November 2, 1983. n3 (*Id.* at P 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C.) On February 8, 1988, Plaintiff entered into a settlement agreement with the City of Chicago, n4 Byrne, Dignan and Grunhard, whereby Plaintiff, who had legal representation, accepted $ 3,000 in exchange for dismissing the 1986 action (the "1988 Stipulation"). n5 (R. 1-1; Compl. at P 41.) (R. 28-1; City [*11] Defs.' Mot. to Dismiss, Ex. B.) Plaintiff alleges that he only accepted the $ 3,000 settlement because "Defendants successfully suppressed, destroyed, and covered up their torture of Plaintiff, numerous other cases of torture, and the implements of torture." (R. 1-1; Compl. at P 41.)

---

n3 Although Plaintiff did not attach the 1986 complaint to the Complaint, the Court may nevertheless consider the 1986 complaint, which the City Defendants attached to their motion, as part of the pleadings because Plaintiff refers to the 1986 action in the Complaint and it is central to his claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Continental Cas. Co. v. American Nat.'l Ins. Co.,* 417 F.3d 727, 731 n.2 (7th Cir. 2005) (same). Also, as the City Defendants note, Plaintiff filed his prior action in September of 1986, not in 1987, as Plaintiff alleges in the Complaint.

[*12]

n4 According to the settlement agreement, the City of Chicago "agreed to be made a party-defendant to this lawsuit for the sole purpose of having a judgment entered against it." (R. 28-1; City Defs.' Mot. to Dismiss, Ex. B at 1.)

n5 The Court will consider the 1988 Stipulation, which the City Defendants attached to their motion, as part of the pleadings because Plaintiff refers to this release in the Complaint and it is central to his claim. *See Venture Assocs.*, 987 F.2d at 431; *Continental Cas.*, 417 F.3d at 731 n.2.

## C. Investigations into Pattern and Practice of Torture at Area 2

On November 7, 1983, the Office of Professional Standards of the Chicago Police Department (the "OPS") opened an investigation into Plaintiff's allegations of torture. (*Id.* at P 38.) The OPS entered "not sustained" findings approximately a year later and neither Martin nor the OPS took disciplinary actions against the Defendant Officers. (*Id.*) According to Plaintiff, in November 1984 and February 1985, OPS Director David Fogel ("Fogel") secretly provided to Police [*13] Superintendent Fred Rice ("Rice") summaries of numerous cases of torture that Burge committed. (*Id.* at P 40.) Rice took no action. (*Id.*) Rice, Fogel, their successors, the City and the City's lawyers allegedly suppressed these summaries. (*Id.*) They were ultimately discovered in an inspection in August 2004. (*Id.*)

In 1990, after Plaintiff was convicted and entered into the 1988 Stipulation, the OPS completed an investigation into allegations of torture of suspects, including Plaintiff, at Area 2. (*Id.* at P 42.) In a secret report that Martin received, the OPS set forth its findings that from 1973 to 1985, there was a practice of systematic abuse of suspects, including Plaintiff, at Area 2. (*Id.*) This report also stated that Burge and two other Area 2 detectives tortured Andrew Wilson and recommended removing Burge from his position. (*Id.* at P 43.) In February 1992, a federal court ordered the release of the secret report. (*Id.* at P 45.) Plaintiff alleges that following the release of the report, Martin and the Mayor attempted to publically discredit the report. (*Id.* at P 46.) According to Plaintiff, the Mayor, who served as State's Attorney of Cook [*14] County from 1981 to 1988, had notice of the abuse at Area 2, but refused to prosecute any Area 2 detectives in connection with such abuse. (*Id.* at P 47.) Additionally, Plaintiff alleges that Martin, Shines and others refused to investigate other allegations of torture. (*Id.* at P 48.)

In January 1992, Martin and the City admitted that Burge and those under his command tortured suspects. (*Id.* at P 49.) According to Plaintiff, in February 1993, the Chicago Police Board fired Burge for torturing Andrew Wilson. (*Id.* at P 50.) Also in 1993, the OPS reopened investigations into approximately 10 Area 2 torture cases, included Plaintiff's. (*Id.* at 55.) The OPS then

found that Byrne, Dignan and Grunhard "racially abused and tortured Plaintiff." (*Id.*) Shines allegedly suppressed these findings from 1993 to 1998, when she left office. (*Id.* at P 57.) According to Plaintiff, in 1998, Hillard and Needham, among other things, overturned the OPS findings regarding the torture of Plaintiff and five other individuals and suppressed the OPS findings from Plaintiff. (*Id.* at P 58.)

## D. Dismissal of Charges Against Plaintiff

In 1997, an Illinois appellate court ordered [*15] that Plaintiff receive a new suppression hearing so that he could present the newly discovered evidence of torture. (*Id.* at P 59.) This hearing commenced in 1999. (*Id.* at P 60.) At the hearing, Plaintiff presented such evidence of torture. (*Id.*) According to Plaintiff, "the State's Attorney's Officer, rather than to again elicit the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case on April 14, 2004." (*Id.*) At the time of his release, Plaintiff had spent twenty-one years in prison for the murder of Darrin Ross. (*Id.* at P 63.)

## ANALYSIS

## I. Legal Standard

The City and County Defendants bring their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests whether plaintiff has "stated a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those [*16] allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The Court, however, is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). The Court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

## II. City Defendants

### A. 1988 Settlement Agreement

The City Defendants ask the Court to dismiss the Complaint on various grounds. The Court turns first to the purported preclusive effect of a settlement agreement that Plaintiff entered into with some of the City Defendants approximately seventeen years prior to filing the Complaint. In 1986, Plaintiff filed a 42 U.S.C. § 1983

action against Byrne, Dignan and Grunhard alleging violations of Plaintiff's constitutional rights in connection with the alleged excessive force used against Plaintiff on November 2, 1983. (R. [*17] 1-1; Compl. at P 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C.) On February 8, 1988, Plaintiff entered into a settlement agreement whereby Plaintiff, who was represented by counsel, accepted $ 3,000 in exchange for dismissing the 1986 action against Byrne, Dignan and Grunhard. (R. 1-1; Compl. at P 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. B.) The City Defendants argue that "Plaintiff's claims in this action are barred by the settlement of his 1986 lawsuit, which was based upon the same events that underlie his present complaint." (R. 26-1; City Defs.' Mot. to Dismiss at 4.) Plaintiff argues that the 1988 Stipulation does not cover the claims he asserts in the Complaint and that the 1988 Stipulation is not valid or enforceable. The Court addresses the scope and the enforceability of the 1988 Stipulation individually.

### 1. Scope of the 1988 Stipulation

Plaintiff and the City Defendants agree that Illinois law governs the interpretation of the 1988 Stipulation. In Illinois, "it is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts." *Chubb v. Amax Coal Co., Inc.,* 125 Ill. App. 3d 682, 685, 466 N.E.2d 369, 372, 80 Ill. Dec. 917, 920 (5th Dist. 1984); [*18] *see also Laserage Tech. Corp. v. Laserage Labs., Inc.,* 972 F.2d 799, 802 (7th Cir. 1992). "The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction." *Chubb,* 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920. "A release cannot be construed to include claims not within the contemplation of the parties." *Carlile v. Snapon Tools,* 271 Ill. App. 3d 833, 838, 648 N.E.2d 317, 321, 207 Ill. Dec. 861, 865 (4th Dist. 1995) (citations omitted). "Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski v. Lucente,* 104 Ill.2d 317, 323, 472 N.E.2d 791, 794, 84 Ill. Dec. 654, 657 (Ill. 1984).

The 1988 Stipulation, on its face, is clear and unambiguous. It provides that

> Plaintiff understands, upon advice of his counsel, and agrees that such Judgment is a final [*19] and total settlement of all claims he has, or may have in the future,

> arising either directly or indirectly out of the incident which was the basis of this litigation, and that such finality is applicable to the remaining Defendant, the City of Chicago, its officers, agents and employees.

(R. 28-1; City Defs.' Mot. to Dismiss, Ex. B at P 12.) Because the 1988 Stipulation is clear, unambiguous and specific, the Court will look to the document itself to determine its meaning and the parties' intent. *See Rakowski,* 104 Ill.2d at 323, 472 N.E.2d at 794, 84 Ill. Dec. at 657; *see also Ainsworth Corp. v. Cenco Inc.,* 158 Ill. App. 3d 639, 650, 511 N.E.2d 1149, 1156, 110 Ill. Dec. 829, 836 (1st Dist. 1987); *Crown Corr, Inc. v. Wil-Freds Constr., Inc.,* 2000 U.S. Dist. LEXIS 17961, No. 94-6535, 2000 WL 1809996, at *3 (N.D. Ill. Dec. 11, 2000); *Rail-Ways, Inc. v. Indiana & Kensington R.R. Co.,* 1998 U.S. Dist. LEXIS 17917, No. 95-1526, 1998 WL 792481, at *4 (N.D. Ill. Nov. 9, 1998). The 1988 Stipulation, on its face, releases all claims that arise directly or indirectly from the "incident." The 1986 complaint makes clear that the "incident" is Byrne's, Dignen's and Grunhard's treatment [*20] of Plaintiff on November 2, 1983. n6 (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C at 3.) Likewise, Plaintiff's treatment on November 2, 1983 serves as the basis for the Complaint. (See, e.g., R. 1-1; Compl. at PP 18-30.) Because the "incident" serves as the basis for the Complaint, the twelve causes of action Plaintiff asserts in it necessarily arise either directly or indirectly from the "incident." Therefore, the 1988 Stipulation, on its face, purports to cover those causes of action.

> n6 Specifically, the 1986 complaint alleges that on November 2, 1983: (1) Byrne, Grunhard and Dignen damaged Plaintiff's apartment and personal possessions, and arrested Plaintiff; (2) Dignen forced Plaintiff to play "Russian Roulette" while he asked Plaintiff questions; (3) Byrne, Grunhard and Dignen lifted Plaintiff in the air while he was handcuffed; (4) Byrne used an electric cattle prod on Plaintiff while he asked Plaintiff about a murder case; and (5) Byrne used racial slurs when he addressed Plaintiff. (R. 28-1; City Defs.' Mot. to Dismiss, Ex. Cat 3.)

[*21]

Plaintiff does not argue that the 1988 Stipulation is ambiguous, nor does he contest that the twelve causes of action he alleges in the Complaint arise directly or indirectly from the "incident." Instead, Plaintiff argues that an examination of the circumstances surrounding the

execution of the 1988 Stipulation reveals that the parties did not intend to release the claims that are currently before the Court. As addressed above, the Court does not look to extrinsic evidence to determine the parties' intent because the 1988 Stipulation, on its face, is clear and explicit. *See, e.g., Rakowski,* 104 Ill.2d at 323, 472 N.E.2d at 794, 84 Ill. Dec. at 657.

Plaintiff also argues that "Illinois courts have repeatedly and unequivocally held that a release 'will not be extended to cover claims that may arise in the future.'" (R. 54-1; Pl.'s Resp. to City Defs.' Mot. to Dismiss at 5) (citing *Chubb,* 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920.) Plaintiff's quote from the *Chubb* case is incomplete. *Chubb* states that "*where the language of the release is directed to claims then in existence,* it will not be extended to cover claims [*22] that arise in the future." 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920 (emphasis added). At issue in *Chubb* was whether a release, which purported to cover only causes of action that existed as of the date of the release, applied to an injury that occurred approximately two years after the execution of the released. n7 Here, the 1988 Stipulation specifically states that it applies to claims that Plaintiff may have in the future. Plaintiff's arguments, therefore, are unavailing. For the reasons set forth above, the 1988 Stipulation covers the twelve causes of action Plaintiff currently brings before the Court.

n7 Plaintiff also cites to *Carona v. Illinois C. G. R. Co.,* 203 Ill. App. 3d 947, 561 N.E.2d 239, 148 Ill. Dec. 933 (5th Dist. 1990), which is similarly distinguishable from this case. In *Corona,* "the plaintiff had filed a claim based upon a separate and distinct accident from the incident particularized in the executed release." 203 Ill. App. 3d at 952, 561 N.E.2d at 243, 148 Ill. Dec. at 937.

[*23]

## 2. Enforceability of the 1988 Stipulation

Plaintiff argues that even if the 1988 Stipulation does, on its face, purport to release all of the claims set forth in the Complaint, his claims nevertheless survive because the 1988 Stipulation is invalid an unenforceable. Under Illinois law, "once the defendant establishes the existence of a release, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Simmons v. Blauw,* 263 Ill. App. 3d 829, 832, 635 N.E.2d 601, 603, 200 Ill. Dec. 262, 264 (1st Dist. 1994). A release is invalid, and the Court will not enforce it, if "there has been fraud, duress, mutual mistake, or, at least in some cases, unconscionability." *Carlile,* 271 Ill. App. at 839, 648 N.E.2d at 322,

207 Ill. Dec. at 866. Plaintiff alleges sufficient allegations of fraud to render the 1988 Stipulation invalid at this stage of the litigation. Specifically, Plaintiff alleges that his tortured confession was the prosecution's only evidence against him at the 1984 criminal trial, and served as the basis for his underlying conviction. (R. 1-1; Compl. at P 39.) Plaintiff further [*24] alleges that at the time of his criminal trial, certain of the City Defendants acted individually and together to suppress evidence of his torture and the torture of other suspects in Area 2, and to deceive the prosecuting attorneys and judges. (*Id.* at PP 37, 65.) Additionally, Plaintiff alleges that in November 1984 and February 1985 Fogel, the OPS Director, secretly provided to Rice, the Police Superintendent, summaries of numerous cases of torture that Burge committed. (*Id.* at P 40.) According to Plaintiff, Rice, Fogel, their successors, the City, and the City's lawyers acted individually and together to suppress that exculpatory evidence. (*Id.*) Therefore, at the time Plaintiff brought his 1986 action, he did not have access to the suppressed evidence of his torture or the torture of other Area 2 suspects. Accepting Plaintiff's allegations as true and drawing all inferences in his favor, as the Court must, these allegations of fraud are sufficient to invalidate the 1988 Stipulation.

*Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984) (*rev'd on other grounds, Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005)) lends support. In *Bell,* [*25] the Seventh Circuit affirmed the district court's holding that a settlement agreement did not bar a cause of action where the record was "'replete with allegations of fraud, concealment and a broad-based cover-up on the part of the defendants Milwaukee Police Department, Howard Johnson, Edwin Shaffer, Thomas Grady, and the Office of the Milwaukee County District Attorney.'" *Id.* at 1227 (citing *Bell v. City of Milwaukee,* 514 F. Supp. 1363, 1368-69 (E.D. Wis. 1982)). The district court in *Bell,* in ruling on a summary judgment motion, explained that

the fraud in this case is sufficient to nullify an otherwise valid settlement and dismissal. This is not a case in which the defendant simply lied and thereby made the plaintiff's proof of his case difficult. Rather, this is a case of massive conspiracy by high ranking Milwaukee officials to prevent the disclosure of the true facts of the shooting of Daniel Bell. Given the monopoly on force held by the government, this conspiracy prevented the proper functioning of the judicial system.

*Bell v. City of Milwaukee,* 536 F. Supp. 462, 465-66 (E.D. Wis. 1982). This reasoning, with which [*26] the Seventh Circuit agreed, applies with equal force to this case. Accordingly, the City Defendants' argument that the 1988 Stipulation bars Plaintiff's claims fails.

### B. Statute of Limitations

#### 1. Section 1983 Claims

The City Defendants argue that the applicable statute of limitations bars Counts I (§ 1983 due process claim), II (§ 1983 false arrest and false imprisonment claim), III (§ 1983 excessive force claim), and IV (§ 1983 coercive interrogation claim), and Plaintiffs § 1983 conspiracy claims. Because § 1983 does not set forth a limitations period, "a federal court must adopt the forum state's statute of limitations for personal injury claims." *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S. Ct. 1938, 1947, 85 L. Ed. 2d 254 (1985)). "The appropriate statute of limitations for § 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13-202." *Id.* Although state law governs the length of the statute of limitations period, federal law governs when § 1983 claims accrue. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1992). [*27] The City Defendants argue that Plaintiff's § 1983 claims accrued when the alleged misconduct occurred and are, therefore, time-barred. Their analysis, however, completely overlooks the impact of *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), on Plaintiff's § 1983 claims. In *Heck,* the Supreme Court held that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity [*28] of his conviction or sentence; if it would, the complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87, 114 S. Ct. 2372-73 (footnotes omitted) (emphasis in original). Under *Heck,* if a judgment in favor of Plaintiff on his § 1983 claims "would necessarily imply the invalidity of his conviction or sentence," Plaintiff's claims would be timely because he could not have brought those claims before April 14, 2004, the date the Cook County State's Attorney's Office dismissed charges against him. n8 512 U.S. at 487, 114 S. Ct. at 2372.

n8 For the first time in their reply, the City Defendants argue that *Heck* is not applicable because Plaintiff already brought certain constitutional claims before Judge Hart in his 1986 suit. The City Defendants do not support this argument with citations to any case law. Their failure to support this argument with any legal authority waives it. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). Moreover, this argument is waived because it was raised for the first time on reply. *See Luellen v. City of East Chicago,* 350 F.3d 604, 612 n.4 (7th Cir. 2003).

[*29]

#### (i) Due Process Claim (Count I)

In this case, a judgment in favor of Plaintiff on his § 1983 due process claim would "necessarily imply the invalidity of his conviction." *Heck,* 512 U.S. at 487, 114 S. Ct. at 2372. Plaintiff's due process claim alleges a deprivation of a right to a fair trial and wrongful conviction. On its face, this claim directly contests the validity of Plaintiff's underlying conviction. Therefore, in accordance with *Heck,* Plaintiff's due process claim is timely because it did not accrue until April 14, 2004. *See id.* at 489-90, 114 S. Ct. at 2374 ("a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence

has been invalidated"); *see also Howard v. City of Chicago,* 2004 U.S. Dist. LEXIS 21537, No. 03-8481, 2004 WL 2397281, at *8 (N.D. Ill. Oct. 25, 2004) (holding that "the accrual of Plaintiff's claim under due process was postponed by *Heck* until Howard was pardoned").

**(ii) False Arrest and False Imprisonment Claims (Count II)**

Similarly, Plaintiff could not have raised his § 1983 false arrest and false imprisonment claims without [*30] challenging the validity of his underlying conviction. Plaintiff alleges that certain of the City Defendants falsely arrested and falsely imprisoned him, and that following his arrest, they tortured him until he provided a confession. According to Plaintiff, this coerced confession was the sole basis for his 1984 conviction. Therefore, Plaintiff's false arrest and false imprisonment claims are timely because Plaintiff would have impugned the validity of his underlying conviction if he had raised these claims prior to April 14, 2004. *See Gauger v. Hendle,* 349 F.3d 354, 361 (7th Cir. 2003) ("For Gauger to mount an attack based on 42 U.S.C. § 1983 on his arrest was implicitly to challenge the legality of his conviction, which rested crucially on the statements that he made to the police when he was questioned after being arrested.").

**(iii) Excessive Force and Coercive Interrogation Claims (Counts III, IV)**

*Heck* likewise applies to Plaintiff's excessive force and coercive interrogation claims. As stated above, Plaintiff alleges that his "coerced and fabricated 'confession' was presented by the prosecution as the only evidence against [*31] him at the 1984 trial and provided the basis for his conviction." (R. 1-1; Compl. at P 39.) Accordingly, Plaintiff could not have raised claims regarding the excessive force and coercion used during his interrogation without necessarily implying the invalidity of his underlying conviction. *See Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *7 ("Since Howard's conviction rested almost entirely on his involuntary confession plus the alleged coerced witness testimony, we conclude that Howard could not have challenged Defendants' acts of torturing him and fabricating his confession without necessarily implying the invalidity of his conviction."); *Patterson v. Burge,* 328 F. Supp. 2d 878, 897 (N.D. Ill. 2004) (same); *Orange v. Burge,* 2005 U.S. Dist. LEXIS 7234, No. 04-0168, 2005 WL 742641, at *7 (N.D. Ill. Mar. 30, 2005) (same). Therefore, Plaintiff's § 1983 due process, false arrest, false imprisonment, excessive force, and coercive interrogation claims are timely because under *Heck,* Plaintiff could not have brought these claims prior to April 14, 2004.

**(iv) Conspiracy Claims (Counts I-V)**

In Counts I through V, Plaintiff alleges that certain of the City Defendants acted [*32] "individually, jointly, and in conspiracy" to cause the violations underlying these § 1983 claims. (R. 1-1; Compl. at PP 68, 71, 74, 78, 81.) Because the Court finds that these underlying causes of action are timely, Plaintiff's conspiracy claims based on the causes of action are also timely. *See Hobley v. Burge,* 2004 U.S. Dist. LEXIS 10228, No. 03-3678, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004) ("*Hobley I*") (citing *Castillo v. Zuniga,* 2002 U.S. Dist. LEXIS 4261, No. 01-616, 2002 WL 398519, at *10 (N.D. Ill. Mar. 14, 2002)) ("because we found that both Hobley's false arrest claim and his due process claim for the deprivation of his right to a fair trial were timely, the conspiracy to deprive him of those rights is also timely"); *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *11 (same). Moreover, *Heck* applies to Plaintiff's § 1983 conspiracy claims. *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *11; *Hobley I,* 2004 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at *8. Plaintiff's § 1983 conspiracy claims allege that the City Defendants conspired to, among other things, deprive him of his right to a fair trial, falsely arrest and imprison him and coercively interrogate him. Therefore, under *Heck,* Plaintiff [*33] could not have pursued his conspiracy claims without implying the invalidity of his underlying conviction.

**2. State Law Claims**

**(i) False Arrest and False Imprisonment Claims (Count VII)**

The City Defendants argue that Plaintiff's state law false arrest and false imprisonment claims are time-barred. They make no effort, however, to separate their arguments regarding Plaintiff's § 1983 claims and his state law claims, and they do not provide the Court with any pertinent case law. As such, the City Defendants waive their argument that Plaintiff's state law false arrest and false imprisonment claims are untimely. *See Berkowitz,* 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland,* 395 F.3d at 759 ("Perfunctory or undeveloped arguments are waived.")

**(ii) Intentional Infliction of Emotional Distress Claim (Count IX)**

The City Defendants argue that Plaintiff's intentional infliction of emotional distress claim is time-barred. The Court disagrees. Courts in the Northern District of Illinois "have [*34] consistently held that the statute of limitations on an [intentional infliction of emotional distress] claim does not begin to run until the state criminal proceedings are terminated." *Hobley v. Burge,* 2004 U.S.

Dist. LEXIS 20844, No. 03-3678, 2004 WL 2658075, at *9 (N.D. Ill. Oct. 13, 2004) ("*Hobley II*") (citing *Hobley* 1, 2001 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at *9 (citing cases)); *see also Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at **8-9; *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at **14-15. The City Defendants ask the Court to reexamine this body of case law in light of the Seventh Circuit's decision in *Leavell v. Kieffer,* 189 F.3d 492 (7th Cir. 1999). The court in *Orange* correctly rejected this argument. In *Orange,* Judge Holderman explained that *Leavell* is distinguishable because it "discusses the applications of statute of limitations in a *Bivens* action brought by taxpayers against the IRS employee who conducted an audit of the taxpayers." *Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641 at *9 (citation omitted). Judge Holderman further noted that because the tort of intentional infliction of emotional distress is an Illinois state law tort, the court must follow [*35] the decisions of the Illinois Supreme Court, such as *Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 798 N.E.2d 75, 278 Ill. Dec. 228 (Ill. 2003). *Id.* In *Feltmeier,* the Illinois Supreme Court held that "the continuing tort rule should be extended to apply in cases of intentional infliction of emotional distress," and as such, "a plaintiff's cause of action accrues, and the state of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." 207 Ill. 2d at 284-85, 798 N.E.2d at 88-89. The Court agrees with the analysis set forth in *Orange* and declines the City Defendants' request that it reexamine the case law in the Northern District of Illinois regarding accrual of intentional infliction of emotional distress claims. Because Plaintiff's intentional infliction of emotional distress claim did not accrue until the Cook County State's Attorney's Office dismissed the charges against Plaintiff on April 14, 2004, it is timely.

### (iii) Conspiracy Claim (Count X)

The City Defendants argue that the Court should dismiss Plaintiff's state law conspiracy claim as untimely. The only case they cite to support this argument [*36] is *Pitts v. City of Kankakee, Illinois,* 267 F.3d 592 (7th Cir. 2001). *Pitts* is a case involving a § 1983 claim of defamation to retaliate for exercising First Amendment rights. It does not address the issue of when an Illinois state law conspiracy claim accrues for statute of limitation purposes. The City Defendants' failure to provide the Court with a developed legal argument or pertinent case law waives their argument that Count X is untimely. *See Berkowitz,* 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

### C. Deprivation of Access to the Courts (Count V)

Count V alleges that "Plaintiff has lost his Fourth, Fifth, and Fourteenth Amendment claims of torture and coercive interrogation against some or all of the Defendants by accepting a settlement of his 42 U.S.C. § 1983 claim for a tiny fraction of what his claim is actually worth." (R. 1-1; Compl. at P 81.) In his response, Plaintiff asserts that if the Court finds that the 1988 Stipulation bars some or all of the causes of action Plaintiff currently [*37] brings before the Court, such a finding would deny him his constitutional right of access to the courts. Therefore, according to Plaintiff, his denial of access claim as to the City Defendants is only viable if the Court finds that the 1988 Stipulation bars his current claims. As stated above, the Court holds that the 1988 Stipulation does not bar any of the claims he asserts in the Complaint. For this reason, and the reasons stated below in section III, F of the argument section of the Opinion, the Court dismisses Count V as to the City Defendants.

### D. Due Process Claim (Count I)

Count I alleges that certain of the City Defendants "unconstitutionally deprived Plaintiff of his liberty and violated his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment." (R. 1-1; Compl. at P 68.) The City Defendants move to dismiss Count I for two reasons. First, the City Defendants assert that Plaintiff cannot base his due process claim on the existence of a *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), violation because no such violation occurred. Second, they argue that Plaintiff's allegations [*38] in support of Count I only allege malicious prosecution and false imprisonment claims, not a violation of Plaintiff's constitutional right to due process.

#### 1. *Brady* Violation

"In practical terms, a *Brady* violation has three components: (1) the evidence at issue must be favorable to the accused, meaning either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued." *Patterson,* 328 F. Supp. 2d at 889 (citing *Stickler v. Greene,* 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999)). *Brady* violations may occur not only during a trial, but also before and after trial. *Id.* (citations omitted). The failure to comply with *Brady* results in a due process violation. *See Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir. 2001).

The City Defendants, relying on *Gauger,* argue that Plaintiff cannot assert a *Brady* violation because Plaintiff was aware of the allegedly suppressed exculpatory evidence, namely the fact that certain of the City Defendants tortured him and coerced him into providing a confession. [*39] Under the City Defendants' theory, *Brady*

does not require the disclosure of evidence of which Plaintiff is already aware. In *Gauger*, the plaintiff argued that *Brady* "required the detectives to give truthful versions of Ganger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial." *Gauger*, 349 F.3d at 360. The Seventh Circuit, however, held that the obligation under *Brady* to provide criminal defendants with exculpatory evidence "falls out, because Gauger knew what he had said at the interrogation." *Id. Gauger*, however, is distinguishable from this case because in *Gauger*, the alleged *Brady* violation "was based entirely on evidence obtained during the state's interrogation of the accused." *Howard*, 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *9. In this case, as in *Patterson*, *Orange* and *Howard*, Plaintiff alleges that the purported *Brady* violation results from obstructions of justice that took place both inside and outside of the interrogation room. *See Orange*, 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *11; *Patterson*, 328 F. Supp. 2d at 889; *Howard*, 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, [*40] at *9. Specifically, Plaintiff alleges that certain of the City Defendants, acting individually, jointly and in conspiracy,

> caused the wrongful charging, prosecution, and conviction of Plaintiff . . . [and] caused the continuation of that wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and conviction; by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false, totally unreliable, constructed, and coerced; by suppressing additional exculpatory and exonerating torture findings and evidence, as well as other exculpatory evidence; by giving a false and incomplete version of events to prosecutors; by writing false reports and giving false testimony; by improperly influencing the judges hearing Plaintiff's case, *inter alia*, by obstructing investigations which would have led to discovery of further exculpatory evidence

(R. 1-1; Compl. at P 68.) Accordingly, Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of [*41] their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady*

violation. n9 *See Orange*, 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at * 11; *Patterson*, 328 F. Supp. 2d at 890; *Howard*, 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *10.

> n9 On reply, the City Defendants argue that the Illinois Supreme Court's decision in *People v. Orange*, 195 Ill. 2d 437, 749 N.E.2d 932, 255 Ill. Dec. 450 (Ill. 2001), precludes the Court from finding that Plaintiff has set forth sufficient allegations to find a *Brady* violation. Because the City Defendants do not raise this argument until their reply, they waive the argument. *See Luellen*, 350 F.3d at 612 n.4.

### 2. State Remedies

The City Defendants argue that Plaintiff's allegations in Count I only allege claims of false imprisonment and malicious prosecution. They further assert that *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003), [*42] which relied on *Newsome*, prevents Plaintiff from converting his false imprisonment and malicious prosecution claims into a constitutional due process claim. *McCann* held that plaintiffs cannot "combine what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." 337 F.3d at 786. *Newsome* and *McCann*, however, do not preclude Plaintiff from asserting his due process claim because they "do[] not bar § 1983 claims arising under the language of the constitution itself." *Patterson*, 328 F. Supp. 2d at 890 (citing *Newsome*, 256 F.3d at 751). In *Newsome*, the Seventh Circuit explained that even though "satisfying the elements of the state-law tort of malicious prosecution . . . *knocks out* any constitutional tort of malicious prosecution," the plaintiff did "have a due process claim in the original sense of the phrase-he did not receive a fair trial if the prosecutors withheld material exculpatory details." 256 F.3d at 751-52 (emphasis in original). In this case, Plaintiff alleges [*43] that Defendants coerced, constructed and/or fabricated false statements, withheld the fact that these statements were false from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution, and suppressed exculpatory and exonerating evidence in violation of his rights under the Fourteenth Amendment. These allegations are sufficient at this stage in the litigation to allege a deprivation of Plaintiff's right to a fair trial, which arises from the Constitution itself. *See Patterson*, 328 F. Supp. 2d at 891 ("Patterson's accusations in Count I assert a deprivation of his right to a fair trial which is derived directly from the constitution's guarantee of due process; as such, the clams are not barred by *Newsome*"); *Orange*, 2005 U.S. Dist. LEXIS

7234, 2005 WL 742641, at *13 (same); *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *9 ("Howard's claims . . . arise from allegations that Defendants concealed exculpatory evidence from prosecutors, thereby denying him the right to a fair trial. Because Defendants have not identified a state law claim that addresses Howard's particular due process claims, he cannot be precluded from asserting a constitutional tort claim [*44] on this basis."); *Hobley I,* 2004 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at *10 (same). Accordingly, the Court denies the City Defendants' motion to dismiss Count I.

### E. Malicious Prosecution Claim (Count VIII)

Count VIII alleges a malicious prosecution claim against Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham. Under Illinois law, "to establish a malicious prosecution action, the plaintiff must allege facts showing: '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Swick v. Liautaud,* 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242, 215 Ill. Dec. 98, 102 (Ill. 1996) (quoting *Joiner v. Benton Cmty. Bank,* 82 Ill.2d 40, 45, 44 Ill. Dec. 260, 263, 411 N.E.2d 229, 232 (Ill. 1980) (quotation omitted)); *Fabiano v. City of Palos Hills,* 336 Ill. App. 3d 635, 641, 784 N.E.2d 258, 265, 271 Ill. Dec. 40, 47 (1st Dist. 2002).

The City [*45] Defendants challenge Count VIII only as to Martin, Shines, Hillard, and Needham. They argue that Plaintiff fails to assert an actionable malicious prosecution claim against these Defendants because Plaintiff does not allege that they investigated the underlying murder of Darrin Ross, took an active part in his prosecution, appeared as witnesses at Plaintiff's trial, demonstrated how they continued a prosecution against Plaintiff, or played the required prominent role in the alleged malicious prosecution. In essence, the City Defendants argue that Plaintiff fails to adequately allege the first element of a malicious prosecution claim -- defendant's commencement or continuance of the underlying judicial proceeding.

In support of his malicious prosecution claim, Plaintiff specifically alleges that certain of the City Defendants, including "Martin, individually, jointly, and in conspiracy, initiated a malicious prosecution without probable cause against Plaintiff, and these same Defendants, together with Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said prosecution, again without probable cause." (R. 1-1; Compl. at P 93.) Furthermore, [*46]

Plaintiff alleges that in 1983, Martin, along with other Defendants, "suppressed from the prosecutors who prosecuted Plaintiff, from the judges and juries who heard the case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and motions to suppress, that the admissions they attributed to Plaintiff were false and totally unreliable . . . [and] suppressed, committed perjury about, and destroyed the physical implements of [the] pattern and practice of torture." (*Id.* at P 37.) Plaintiff also alleges that Martin undermined and suppressed the OPS report, which stated that from 1973 to 1985 there was a practice of abusing suspects, including Plaintiff, at Area 2. (*Id.* at PP 42, 44, 45.) Plaintiff further alleges that Martin and Shines refused to investigate allegations of police torture and that Shines suppressed evidence of torture. (*Id.* at PP 48, 57.) Additionally, Plaintiff alleges that Hillard and Needham "violated police regulations and obstructed justice by overturning the OPS sustained findings in Plaintiff's and the other five re-opened cases; by refusing to investigate other torture victims' claims that they had been tortured; by refusing [*47] to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from Plaintiff and other criminal defendants." n10 (*Id.* at P 58.) These allegations satisfy *Federal Rule of Civil Procedure 8(a)*'s requirements. Accordingly, the Court denies the City Defendants' motion to dismiss Count VIII. n11

n10 In a separate section of their motion to dismiss, the City Defendants argue that Plaintiff has not alleged sufficient allegations to hold Martin, Shines, Hillard, and Needham liable in their individual capacities. These allegations, however, demonstrate to the contrary. *See Patterson,* 328 F. Supp. 2d at 888 (declining to dismiss Byrne, Martin, Shines, Hillard, and Needham from the case where "the allegations in Patterson's complaint are more than adequate to put this court and defendants Byrne, Martin, Shines, Hillard, and Needham on notice of the claims against them"); *Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at * 13 (upholding claims against Martin, Shines, Hillard and Needham); *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at *13 (same). Therefore, the Court denies the City Defendants' request that it dismiss Martin, Shines, Hillard, and Needham from the case.

[*48]

n11 In footnote seven of the City Defendants' reply brief, they purport to adopt the County De-

fendants' arguments challenging Plaintiff's malicious prosecution claim. The City Defendants may not raise a new argument on reply and fail to develop it with legal or factual support without waiving it. *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Luellen*, 350 F.3d at 612 n.4 (arguments raised for the first time on reply are waived). Moreover, as discussed below, the Court upholds Count VIII as to the County Defendants.

## F. Conspiracy Claims (Count X, I-V)

The City Defendants next move to dismiss Plaintiff's conspiracy claims. As stated above. Count X specifically alleges a conspiracy claim under Illinois state law, and Counts I though V allege that certain of the City Defendants acted "individually, jointly and in conspiracy" to cause various § 1983 violations. (R. 1-1; Compl. at PP 68, 71, 74, 78, 81.) The City Defendants [*49] raise two main challenges to Plaintiff's conspiracy claims: (1) Plaintiff's allegations are insufficient to support any claim of conspiracy; and (2) the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claims. n12

n12 The City Defendants also assert that "to the extent the allegations in counts I through V and VII through IX fail to adequately assert the underlying causes of action, those same allegations cannot support the derivative conspiracy claims." (R. 43-2; City Defs.' Mot. to Dismiss at 17.) Because the Court upholds Counts I through IV and Counts VII through IX as to the City Defendants, Plaintiff can properly base his conspiracy claims on those causes of action and the allegations underlying those causes of action.

### 1. Sufficiency of Plaintiff's Conspiracy Allegations

The City Defendants argue that the Court should dismiss Plaintiff's conspiracy claims because Plaintiff fails to allege the form and the scope of the purported conspiracies. The Court disagrees. As Judge Holderman [*50] explained in *Orange*, "traditional notice pleading rules apply" to conspiracy claims. 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *14 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993)). Indeed, the Seventh Circuit has explained that "it is enough in pleading a conspiracy merely to indicate the parties, general pur-

pose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Plaintiff's conspiracy allegations meet this standard. Plaintiff identifies each Defendant that was part of the purported conspiracy and the approximate time period each Defendant participated in the conspiracy. Plaintiff also alleges that the general purpose of the conspiracy was "to falsely imprison and/or to continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff." (R. 1-1; Compl. at P 99.) Additionally, Plaintiff specifies the conduct in which the City Defendants allegedly engaged in furtherance of the conspiracy, [*51] including, among other things, torturing Plaintiff, coercing a confession, testifying falsely, and suppressing and destroying evidence of the torture. Accordingly, Plaintiff's allegations are sufficient to "enable [the City Defendants] to prepare [their] defense or for the district court to determine whether the claim was within the ballpark of possibly valid conspiracy claims." *Walker*, 288 F.3d at 1008; *see also Howard*, 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, at **12, 15 (upholding state law and § 1983 conspiracy claims); *Patterson*, 328 F. Supp. 2d at 903 (same).

### 2. Intra-corporate Conspiracy Doctrine

The City Defendants also assert that the intra-corporate conspiracy doctrine bars Plaintiff's § 1983 conspiracy claims. In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), the Seventh Circuit recognized the intra-corporate conspiracy doctrine and held that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). [*52] "In *Wright*, the Seventh Circuit applied the doctrine to claims brought under 42 U.S.C. § 1985 against governmental entities." *Hobley I*, 2004 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at *10 (citing *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1507-08 (7th Cir. 1994)). The City Defendants ask the Court to extend the intra-corporate conspiracy doctrine to Plaintiff's § 1983 conspiracy claims. Although the Seventh Circuit has not reached this issue, several courts in this District have addressed the applicability of the intra-corporate conspiracy doctrine in the context of § 1983 conspiracy claims against police officers. There is a split of opinion among the district courts addressing this issue. The courts in *David v. Village of Oak Lawn*, 1996 U.S. Dist. LEXIS 5624, No. 95-7368, 1996 WL 210072, **3-4 (N.D. Ill. Apr. 29, 1996), and *Chavez v. Illinois State Police*, 1996 U.S. Dist. LEXIS 1540, No. 94-5307, 1996 WL 66136, **7-8 (N.D. Ill. Feb. 13, 1996), for example,

have applied the intra-corporate conspiracy doctrine, while various courts have declined to apply the doctrine. *See, e.g., Hobley I,* 2004 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at **10-11; *Howard,* 2004 U.S. Dist. LEXIS 21537, 2004 WL 2397281, [*53] at *12; *McDorman v. Smith,* 2005 U.S. Dist. LEXIS 15964, No. 05-0448, 2005 WL 1869683, at *6 (N.D. Ill. Aug. 2, 2005); *Williams v. Brown,* 269 F. Supp. 2d 987, 994 (N.D. Ill. 2003), *vacated in part by Williams v. Brown,* No. 01-3228, 2003 WL 22454083 (N.D. Ill. Oct. 3, 2003); *Moreno v. Town of Cicero,* 2002 U.S. Dist. LEXIS 16915, No. 01-1726, 2002 WL 31017932, at *3 (N.D. Ill. Sept. 5, 2002); *Newsome v. James,* 2000 U.S. Dist. LEXIS 5678, No. 96-7680, 2000 WL 528475, **14-16 (N.D. Ill. Apr. 26, 2000); *Jefferson v. City of Harvey,* 1999 U.S. Dist. LEXIS 20158, No. 98-5834, 2000 WL 15097, at ** 4-5 (N.D. Ill. Jan. 5, 2000); *Northen v. City of Chicago,* 1999 U.S. Dist. LEXIS 7897, No. 93-7013, 1999 WL 342441, at **3-4 (N.D. Ill. May 17, 1999); *Cooper v. Harris,* 1999 U.S. Dist. LEXIS 6149, No. 98-1623; 1999 WL 261742, at *3 (N.D. Ill. Apr. 13, 1999); *Salto v. Mercado,* 1997 U.S. Dist. LEXIS 5796, No. 96-7168, 1997 WL 222874, at *1-2 (N.D. Ill. Apr. 24, 1997).

The Court declines to extend the intra-corporate conspiracy doctrine to Plaintiff's § 1983 conspiracy claims. The Court agrees with the reasoning set forth in *James,* upon which the courts in the related *Howard* and *Hobley* cases relied. In *James,* the court explained [*54] that

> the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory. The conduct plaintiff alleges here does not fit that mold. The decision to frame plaintiff for Cohen's murder, as plaintiff alleges it, is not the product of routine police department decision-making.

2000 U.S. Dist. LEXIS 5678, 2000 WL 528475, at *15. In this case, Plaintiff alleges that the City Defendants conspired to: (1) falsely arrest and imprison Plaintiff; (2) torture and physically abuse Plaintiff; (3) coercively interrogate Plaintiff; and (4) cause the wrongful charging, prosecution and conviction of Plaintiff. Plaintiff's conspiracy claims stand. n13

> N13 In addition to Plaintiff's § 1983 conspiracy claims, the Complaint may also allege a

conspiracy claim under § 1985. In his response, Plaintiff states that he "makes only one § 1985 conspiracy claim -- for violation of his right to equal protection of law." (R. 54-1; Pl.'s Resp. to City Defs.' Mot. to Dismiss at 26 n.12.) Plaintiff, however, further states that "since this claim is also made under § 1983 . . . Plaintiff need not also pursue this claim under § 1985." (*Id.*) (citations omitted.) It is unclear whether Plaintiff, by making this statement, intends to waive his alleged conspiracy claim under § 1985. To the extent Plaintiff does not intend to waive this claim, the Court does not find that the intra-corporate conspiracy doctrine bars his claim. As the Seventh Circuit has made clear, the intra-corporate conspiracy doctrine applies during the pursuit of "lawful business" when the purported conspirators act "within the scope of their employment." *Travis,* 921 F.2d at 110. At this stage, the Court cannot say that the City Defendants' conduct was within the scope of their employment and was engaged in during the pursuit of lawful business. Moreover, the Seventh Circuit has stated that "except in egregious circumstances, intra-entity discussions that result in discriminatory or retaliatory actions lie outside the scope of § 1985." *Wright,* 40 F.3d at 1508-09. This case may very well present the type of "egregious circumstances" that exempt it from the reach of the intra-corporate conspiracy doctrine.

[*55]

### G. Collateral Estoppel

The City Defendants argue that the doctrine of collateral estoppel bars Plaintiff's claims because "Plaintiff's claim of innocence was extensively litigated before and adjudicated by the Illinois Prisoner Review Board." (R. 43-2; City Defs.' Mot. to Dismiss at 22.) Plaintiff, in his response, raises a number of issues of fact regarding, among other things, whether he had a full and fair opportunity to litigate before the Illinois Prisoner Review Board. The parties' briefs make clear that the Court must look to information outside the pleadings to properly rule on this issue. Therefore, the Court agrees with Judge Holderman's assessment in *Orange* that "evaluation of collateral estoppel requires the court to make factual determinations that are properly considered when the court can evaluate evidence outside the plaintiff's complaint such as through a Rule 56 motion for summary judgment." *Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *5; *see also Patterson,* 328 F. Supp. 2d at 887 (declining to dismiss plaintiff's claims under the doctrine of collateral estoppel because "the court cannot rule on defendants' collateral estoppel arguments [*56] without

considering facts and evidence outside the pleadings"); *Hobley I,* 2004 U.S. Dist. LEXIS 10228, 2004 WL 1243929, at *3-4 (same). Accordingly, at this stage in the litigation, the Court will not dismiss Plaintiff's claims under the doctrine of collateral estoppel.

### H. Section 1983 *Monell* Policy Claim (Count VI)

Count VI alleges a § 1983 *Monell* policy claim against the City. The City Defendants argue that "because plaintiff has failed to assert actionable § 1983 claims in counts I through V, his *Monell* claim against the City in Count VI fails as a result." (R. 43-2; City Defs.' Mot. to Dismiss at 22.) The Court, however, upholds Counts I though IV as to the City Defendants. Therefore, the Court denies the City Defendants' motion to dismiss Count VI.

### I. *Respondeat Superior* and Indemnification Claims (Counts XI, XII)

Counts XI and XII allege liability against the City on theories of *respondeat superior* and indemnification pursuant to 745 ILCS § 10/9-102. The City Defendants challenge these claims on the ground that the City cannot be liable for violations of Illinois state law where its employees are not liable. The Court, [*57] however, does not dismiss Counts VII through X as alleged against the City's employees. Accordingly, the Court denies the City Defendants' motion to dismiss Counts XI and XII.

### III. County Defendants

Plaintiff brings a number of causes of action against the County Defendants. Specifically, Plaintiff asserts seven claims against Devine in his individual capacity: (1) § 1983 claim for deprivation of the right to a fair trial and wrongful conviction (Count I); (2) § 1983 claim for false arrest and false imprisonment (Count II); (3) § 1983 due process claim for deprivation of access to courts (Count V); (4) state law false arrest and imprisonment claim (Count VII); (5) state law malicious prosecution claim (Count VIII); (6) state law intentional infliction of emotional distress claim (Count IX); and (7) state law conspiracy claim (Count X). Additionally, Plaintiff asserts a claim for indemnification pursuant to 745 ILCS 10/9-102 (Count XII) against the County and the Cook County State's Attorney's Office. The County Defendants seek to dismiss each of these claims.

### A. Eleventh Amendment

The County Defendants argue, and Plaintiff does [*58] not contest, that the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office. "The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies." *Garcia v. City of Chicago,* 24 F.3d 966, 969 (7th Cir. 1994). Because

state's attorney's offices are state agencies, the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office. *See Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 264-65 (7th Cir. 1999) (citing *Garcia,* 24 F.3d at 969); *Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *16-17; *Patterson,* 328 F. Supp. 2d at 899; *Webb v. City of Joliet,* 2004 U.S. Dist. LEXIS 9551, No. 03-4436, 2004 WL 1179413, at *5 (N.D. Ill. May 26, 2004). Accordingly, the Court dismisses Plaintiff's claims against the Cook County State's Attorney's Office with prejudice, and addresses the County Defendants' remaining arguments only as they relate to the County and Devine.

### B. Illinois Court of Claims

The County Defendants also argue that the Court should dismiss Plaintiff's state law tort claims against Devine because [*59] the Illinois Court of Claims has exclusive jurisdiction over those claims. "In the Court of Claims Act, the General Assembly provided that the Court of Claims has the 'exclusive jurisdiction to hear and determine * * * all claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit.'" *Price v. Illinois,* 354 Ill. App. 3d 90, 92, 820 N.E.2d 104, 106, 289 Ill. Dec. 596, 598 (1st Dist. 2004) (citing 705 ILCS 505/8(d) (West 1994)). "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel,* 133 Ill.2d 295, 308, 549 N.E.2d 1240, 1247, 140 Ill. Dec. 368, 375 (Ill. 1990). Regarding the issues involved, "an action is against the state when there are: "'(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent [*60] of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State * * *."" *Jinkins v. Lee,* 209 Ill.2d 320, 330, 807 N.E.2d 411, 418, 282 Ill. Dec. 787, 794 (Ill. 2004) (citing *Healy,* 133 Ill.2d at 309, 549 N.E.2d at 1247, 140 Ill. Dec. at 375 (quotations omitted)). "Regarding the relief sought, a court must also consider whether the relief sought is such that 'a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.'" *Id.* (citing *Currie v. Lao,* 148 Ill.2d 151, 159, 592 N.E.2d 977, 980, 170 Ill. Dec. 297, 300 (Ill. 1992)).

Plaintiff alleges that from 1988 to 1996, Devine served as counsel to the City of Chicago and represented Burge. (R. 1-1; Compl. at PP 51, 53.) As counsel for Burge, Plaintiff alleges that Devine received evidence that Burge tortured suspects. (*Id.* at P 53.) According to

Plaintiff, after receiving this evidence, Devine became the State's Attorney of Cook County and: (1) made false public statements discrediting evidence of torture; (2) refused to investigate [*61] allegations regarding Area 2 and Area 3 detectives' use of torture and abuse; (3) suppressed evidence of torture, including evidence of Plaintiff's torture; and (4) used his position to maintain the wrongful conviction and imprisonment of Plaintiff and other victims of torture. (*Id.* at P54.) These allegations are sufficient to establish that Devine acted in excess of his authority and in violation of applicable laws such that the Illinois Court of Claims does not have exclusive jurisdiction over Plaintiff's state law tort claims. n14 *See Healy,* 133 Ill.2d at 308, 549 N.E.2d at 1247, 140 Ill. Dec. at 375 (citing *Senn Park Nursing Ctr. v. Miller,* 104 Ill.2d 169, 188, 83 Ill. Dec. 609, 618, 470 N.E.2d 1029, 1039 (Ill. 1984)) ( "sovereign immunity affords no protection . . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court"). Moreover, the Court agrees with the reasoning set forth in *Patterson* and *Orange,* two cases pending in the Northern District of Illinois that are based on practically identical allegations [*62] to this case, where Judge Gottschall and Judge Holderman, respectively, held that the Illinois Court of Claims did not have exclusive jurisdiction over comparable claims against Devine. *Patterson,* 328 F. Supp. 2d at 887 (holding that plaintiff's state law charges against Devine did "not belong in the Court of Claims" because plaintiff "accuses [Devine] of acting intentionally and maliciously in violation of Illinois state law"); *Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *18 (holding that "the Illinois Court of Claims exclusive jurisdiction does not apply" because plaintiff's allegations against Devine "relate to actions clearly outside [his] authority" and Devine "participated in actions that deprived [plaintiff] of various constitutional rights"). For these reasons, the Illinois Court of Claims does not have exclusive jurisdiction over Plaintiff's state law tort claims against Devine.

n14 The County Defendants, in their reply, argue that Plaintiff's allegation that "Devine committed the acts alleged above under color of law and in the scope of their [sic] employment as an employee of Cook County and its State Attorneys' Office," (R. 1-1; Compl. at P 109), precludes Plaintiff from asserting that Devine acted in excess of his authority. The Court disagrees. Whether Devine acted within the scope of his authority as State's Attorney of Cook County is a legal conclusion that the Court need not accept as true on a motion to dismiss. *See Hickey,* 287 F.3d

at 658. Accordingly, Plaintiff's allegation that Devine acted within the scope of his employment does not require the Court to find that sovereign immunity protects Devine. *See Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir. 1992) (a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal").

[*63]

### C. Devine's Personal Liability

Plaintiff alleges several causes of action against Devine in his individual capacity. The County Defendants assert that Plaintiff cannot sue Devine in his individual capacity because he does not allege that Devine "was personally involved in the alleged depravation of his constitutional rights." (R. 45-1; County Defs.' Mot. to Dismiss at 4.) They rely on *Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir. 1983), for the proposition that "an *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." 699 F.2d at 869 (emphasis in original). According to the County Defendants, Plaintiff cannot make the requisite showing of participation in the alleged constitutional deprivations because "Mr. Devine was not in office at the time plaintiff was indicted, at the time plaintiff was tried, at the time he was convicted, or at the time the Illinois Supreme Court affirmed plaintiff's conviction." n15 (R. 45-1; County Defs.' Mot. to Dismiss at 5.)

n15 The County Defendants also argue on reply that "plaintiff does not allege that Devine knew any specific exculpatory information regarding Cannon." (R. 76-2; County Defs.' Reply at 3.) Contrary to the County Defendants' assertion, Plaintiff specifically alleges that Devine was "informed of a wealth of compelling evidence that [his] clients, including Burge, Byrne and Dignan, were centrally involved in a pattern and practice of torturing suspects, *including Plaintiff.*" (R. 1-1; Compl. at P 53) (emphasis added).

[*64]

The courts in *Patterson* and *Orange* correctly rejected this precise argument. In *Patterson,* the court found unpersuasive "Devine's argument that he cannot be held individually liable for depriving Patterson of his right to a fair trial because 'he was not in office when Patterson was indicted, when his trial occurred, or when the Illinois Supreme Court affirmed his conviction.'" 328 F. Supp. 2d at 893. The court in *Patterson* explained that allegations of Devine's suppression of exculpatory evidence and defamatory statements, which purportedly

resulted in the denial of plaintiff's right to a fair post-conviction proceeding, were sufficient to support claims against Devine for individual liability under § 1983. *Id.* at 893-94. Similarly, in *Orange,* the court held that plaintiff "successfully state[s] claims against Devine in his personal capacity upon which relief may be granted" because plaintiff "alleged that Devine has made public statements defaming him . . . [and] took actions while he was in private practice during his representation of Burge and then later as the State's Attorney of Cook County to deny Orange his constitutional [*65] rights." 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *19. In this case, as in *Patterson* and *Orange,* Plaintiff alleges that Devine suppressed evidence of torture -- including evidence of Plaintiff's torture -- made false public statements discrediting evidence of torture, refused to investigate allegations of torture and abuse, and used his position to maintain the wrongful conviction and imprisonment of Plaintiff and other victims of torture. (R. 1-1; Compl. at P54.) These allegations are sufficient to support claims against Devine in his individual capacity.

**D. Prosecutorial Immunity**

The County Defendants assert that "Mr. Devine is absolutely immune from suit based upon any prosecutorial function that he performs, including the determination of the position of the State's Attorney's office in response to post-conviction petitions or appeals." (R. 45-1; County Defs.' Mot. to Dismiss at 1.) The County Defendants' failure to provide the Court with any developed legal argument in support of their one-sentence conclusion waives their prosecutorial immunity argument. *See Berkowitz,* 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, [*66] and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland,* 395 F.3d at 759 ("Perfunctory or undeveloped arguments are waived.").

**E. False Arrest and Imprisonment Claims (Counts II, VII)**

Counts II and VII allege that Devine, along with the City Defendants, falsely arrested and falsely imprisoned Plaintiff in violation of the Fourth and Fourteenth Amendments and state law. In their opening brief, the County Defendants only address Plaintiff's § 1983 claim against Devine for false arrest. They argue that Devine did not participate in Plaintiff's arrest, and as such, Plaintiff cannot state a claim against Devine for false arrest. In his response, "Plaintiff concedes that Defendant Devine is not responsible for Plaintiff's false arrest." (R. 62-1; Pl.'s Resp. to County Defs.' Mot. to Dismiss at 8 n.4.) Accordingly, the Court dismisses Plaintiff's false arrest causes of action as to Devine.

The County Defendants do not develop any argument challenging Plaintiff's false imprisonment claim against Devine until their reply. Arguments raised for the first time in a reply, however, are waived. *Luellen,* 350 F.3d at 612 n.4. [*67] Therefore, the Court denies the County Defendants' motion to dismiss Plaintiff's false imprisonment claims as to Devine.

**F. Deprivation of Access to the Courts (Count V)**

Count V alleges that Devine, along with a number of City Defendants, deprived Plaintiff of his right of access to the courts by his "obstruction of justice and suppression of evidence favorable to and exonerating of the Plaintiff." n16 (R. 1-1; Compl. at P 81.) The Supreme Court recognizes two categories of denial of access to courts claims: (1) "systemic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time"; and (2) "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury,* 536 U.S. 403, 413-14, 122 S. Ct. 2179, 2185-86, 153 L. Ed. 2d 413 (2002). This case fits into the second category. To allege a claim for the denial of access, Plaintiff must plead allegations describing: (1) "the underlying cause of action, whether anticipated or lost;" (2) "the official acts frustrating the litigation;" and (3) in cases that "look[] backward, [*68] " "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415, 122 S. Ct. at 2187.

> n16 The Court does not address the effect of the 1988 Stipulation on Plaintiff's denial of access claim against the County Defendants because the 1988 Stipulation does not release any claims against the County Defendants, and, as Plaintiff concedes, Devine was not involved with obtaining the 1988 Stipulation.

The County Defendants argue that Count V fails as a matter of law because "plaintiff is able to bring his underlying claims" and "does not, and cannot, identify any claim which has been lost, or for which he cannot receive recovery in the present lawsuit." (R. 45-1; County Defs.' Mot. to Dismiss at 8-9.) The Court agrees. In *Christopher,* the Supreme Court explained that

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official [*69] acts frustrating the litigation.

It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

536 U.S. at 415, 122 S.Ct. at 2187. Accordingly, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were independently pursued, and a like plain statement should describe any remedy available under the access claim presently unique to it." Id. at 417, 122 S.Ct. at 2188 (footnote omitted). Plaintiff alleges that he has lost his claims of torture (Count III) and coercive interrogation (Count IV). (R. 1-1; Compl. at P 81.) Plaintiff, however, does not allege these causes of action against the County Defendants. Indeed, Plaintiff does not allege that the County Defendants' [*70] actions caused the loss of any underlying claim. See Patterson, 328 F. Supp. 2d at 898 ("The allegations contained in Patterson's right of access claim are deficient, for they do not plead a short and plain statement of the underlying claims and do not establish that Patterson has been denied adequate legal redress for any legitimate claim."). Therefore, the Court grants the County Defendants' motion to dismiss Count V.

### G. Conspiracy Claim Against Devine (Count X)

The County Defendants request that the Court dismiss Plaintiff's conspiracy claim for two reasons. First, the County Defendants argue that the Court lacks jurisdiction over Plaintiff's state law conspiracy claim because the Illinois Court of Claims has exclusive jurisdiction over Plaintiff's state law claims. As discussed above, however, the Illinois Court of Claims does not have exclusive jurisdiction over Plaintiff's state law tort claims against Devine. Second, the County Defendants argue that Plaintiff's conspiracy claim fails because Plaintiff does not state any viable underlying claims against Devine. Because the Court upholds Counts I, II, VII, VIII, and IX as to Devine, this argument also [*71] fails.

### H. Malicious Prosecution (Count VIII)

Count VIII alleges a state law claim for malicious prosecution against Devine. As stated above, under Illinois law, "to establish a malicious prosecution action, the plaintiff must allege facts showing: '(1) the commencement or continuance of an original criminal or civil judi-

cial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" Swick, 169 Ill.2d at 512, 662 N.E.2d at 1242, 215 Ill. Dec. at 102 (quoting Joiner, 82 Ill.2d at 45, 44 Ill. Dec. at 263, 411 N.E.2d at 232 (quotation omitted)). "The absence of any one of these elements bars a plaintiff from pursuing the claim." Swick, 169 Ill.2d at 512, 662 N.E.2d at 1242, 215 Ill. Dec. at 102 (citation omitted).

The County Defendants argue that Plaintiff fails to meet the second element -- termination of the underlying proceeding in favor of the plaintiff. The Illinois Supreme Court has explained that "in regard to the second element, a malicious prosecution action [*72] cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." Id. At the pleading stage of the litigation, "it is sufficient for the court to find that it is possible for plaintiff to prove facts that establish his allegation that the 'charges were resolved in plaintiff's favor.'" Evans v. City of Chicago, 2001 U.S. Dist. LEXIS 14083, No. 00-7222, 2001 WL 1028401, at *12 (N.D. Ill. Sept. 6, 2001) (internal quotations omitted). Here, Plaintiff specifically alleges that Devine, among others, "initiated a malicious prosecution without probable cause against Plaintiff" that "was ultimately terminated in Plaintiff's favor." (R. 1-1; Compl. at P 93.) Plaintiff further alleges that

> In 1997, the Illinois Appellate Court ordered that Plaintiff receive a new motion to suppress hearing at which he be permitted to present all the newly discovered evidence of torture and abuse which had been uncovered since his 1984 motion to suppress hearing. At this remand hearing, which commenced in 1999, the Plaintiff presented a wealth of newly discovered evidence of torture and abuse. The State's Attorney's Office, rather than to [*73] again elicit the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case on April 14, 2004.

(Id. at PP 59-60.) These allegations are sufficient.

The County Defendants' arguments, based on documents and pleadings from Plaintiff's underlying criminal case, do not require a different result. In essence, they are asking the Court to make a finding of fact that the underlying criminal case was not terminated in Plaintiff's favor

because it resulted from an agreement or a compromise. In deciding a motion to dismiss, however, "the court cannot weigh the facts-the court must assume that plaintiff's allegations are true." *Evans,* 2001 U.S. Dist. LEXIS 14083, 2001 WL 1028401, at *12. Accordingly, Plaintiff's malicious prosecution claim against Devine survives. n17

> n17 The Court rules on this issue without relying on the documents the County Defendants attach to their brief and without addressing the propriety of attaching those documents to the brief.

### I. Section 9-102 Indemnity Claim [*74]   (Count XII)

Count XII is an indemnification claim that seeks judgment against the County and the State's Attorney's Office for any amount awarded to Plaintiff for Devine's alleged violations pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102. Because the Court holds that the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office, the Court addresses the validity of Count XII only as to the County. *See Orange,* 2005 U.S. Dist. LEXIS 7234, 2005 WL 742641, at *21.

The County Defendants argue that the Court cannot hold the County liable for indemnification because Devine is not an employee of the County. The Court agrees that Devine is an officer of the State, not an employee of the County. *See Biggerstaff v. Moran,* 284 Ill. App. 3d 196, 199-200, 671 N.E.2d 781, 784, 219 Ill. Dec. 614, 617 (1st Dist. 1996) (citing *Ingemunson v. Hedges,* 133 Ill.2d 364, 367-70, 140 Ill. Dec. 397, 398-400, 549 N.E.2d 1269, 1270-72 (Ill. 1990)). However, the fact that Devine is not an employee of the County is not dispositive. Indeed, as the County Defendants concede, "under the Seventh Circuit's decision [*75] in *Robinson v. Sappington,* 351 F.3d 317 (7th Cir. 2003), the County has a duty to indemnify claims brought against State officials where the County funds the office of that state official" and "the County funds the [State's Attorney's Office]." (R. 45-1; County Defs.' Mot. to Dismiss at 14.) *Robinson* relied on the Illinois Supreme Court's decision in *Carver v. Sheriff of La Salle County,* 203 Ill.2d 497, 787 N.E.2d 127, 272 Ill. Dec. 312 (Ill. 2003), which, in answering a question the Seventh Circuit certified, held that "because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Carver,* 203 Ill.2d at 522, 787 N.E.2d at 141, 272 Ill. Dec. at 326. Furthermore, in *Wallace v. Masterson,* 345 F. Supp. 2d 917 (N.D. Ill. 2004), the court found that "the *Carver*

cases mandate that the County must pay for a tort judgement entered against Masterson [a Cook County Sheriff's Deputy Officer sued in his personal capacity] for which the Sheriff is directed to pay by § 9-102 or is found vicariously liable under [*76] the doctrine of *respondeat superior.*" 345 F. Supp. 2d at 925. Therefore, finding that Devine was not an employee of the County does not automatically release the County from liability for indemnification.

The County Defendants further argue that Plaintiff's indemnification claim against the County must fail because all of Plaintiff's underlying state and federal claims against the County Defendants fail as a matter of law. The Court, however, does not dismiss all of Plaintiff's claims against the County Defendants. The County Defendants' arguments, therefore, do not require the Court to dismiss Count XII as to the County. n18

> n18 The Court notes that it does not hold as a matter of law that the County is liable for indemnification. Instead, the Court holds only that based on the arguments before it, dismissing this cause of action as to the County at this stage is inappropriate.

### J. Collateral Estoppel

For the first time in their reply, the County Defendants raise the issue of collateral [*77] estoppel. The County Defendants do not develop this argument. Instead, they purport to adopt the City Defendants' arguments regarding collateral estoppel. As an initial matter, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Berkowitz,* 927 F.2d at 1384; *see also Estate of Moreland,* 395 F.3d at 759. Furthermore, arguments raised for the first time in a reply are waived. *Luellen,* 350 F.3d at 612 n.4. Accordingly, the County Defendants' collateral estoppel argument is waived. n19

> n19 The Court notes that even if the County Defendants had properly raised the issue of collateral estoppel, for the reasons set forth above, the Court declines to address the purported applicability of the doctrine of collateral estoppel at this time.

### CONCLUSION

For these reasons, the Court grants in part and denies in part the City Defendants' motion to dismiss, and the Court grants in part and denies in part the County [*78] Defendants' motion to dismiss.

Dated: February 2, 2006

ENTERED:

AMY J. ST. EVE

United States District Court Judge

# Exhibit 2

LEXSEE

**JOHN H. CARNEY, et al., Plaintiffs, v. USA, et al., Defendants.**

**Civil Action No. 3:99-CV-1989-M**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**2004 U.S. Dist. LEXIS 10617**

**June 9, 2004, Decided**
**June 9, 2004, Filed**

**SUBSEQUENT HISTORY:** Adopted by, in part, Summary judgment granted by, Summary judgment granted, in part, summary judgment denied, in part by Carney v. United States, 2004 U.S. Dist. LEXIS 19764 (N.D. Tex., Sept. 30, 2004)

**PRIOR HISTORY:** Carney v. United States, 2003 U.S. Dist. LEXIS 5105 (N.D. Tex., Mar. 31, 2003)

**DISPOSITION:** [*1] Magistrate recommended that the Defendants' Motions for Summary Judgment be granted, and that the action be dismissed against Defendants Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono, Frederick Teed, Vincent Fazzio, and Jennifer Gant.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff individuals filed a Bivens action against defendants, federal employees in their individual capacities, arising out of their convictions for bank fraud, mail fraud, wire fraud, conspiracy, and making false statements to government officials. Plaintiffs' convictions were later reversed, giving rise to this action. The employees filed motions for summary judgment. The matter was referred to a magistrate for report and recommendation.

**OVERVIEW:** Plaintiffs' claims were based on their contentions that the Office of Thrift Supervision (OTS) defendants improperly used the savings and loan regulatory examination process to assist the Federal Bureau of Investigation and the Department of Justice in their investigation and prosecution of plaintiffs, and that all defendants improperly withheld exculpatory evidence. First, the magistrate found that to the extent plaintiffs asserted a cause of action under the doctrine of respondeat superior, summary judgment should be granted. The magistrate reasoned that respondeat superior liability was not recognized in a Bivens action. Next, the magistrate found that plaintiff failed to show a genuine issue of law or fact regarding whether the alleged failure to train on a bulletin violated their rights. The magistrate reasoned that plaintiffs failed to show a deficient policy. Finally, the magistrate found the OTS defendants should be granted summary judgment on plaintiffs' perjury claims. The magistrate reasoned that plaintiffs had not shown a genuine issue of fact or law as to whether the OTS defendants were complaining witnesses or testified falsely.

**OUTCOME:** The magistrate recommended that the motion for summary judgment be granted and the action be dismissed with prejudice.

**CORE TERMS:** summary judgment, exculpatory evidence, qualified immunity, withheld, failure to train, malicious prosecution, personal knowledge, declaration, genuine issue, conclusory, constitutional rights, perjury, prosecutor, discovery, constitutional right, subornation of perjury, recommendation, withholding, disclosure, sua sponte, non-movant, deficient, criminal investigation, interview, investor, e-mail, police officer, new trial, pro se, exculpatory

**LexisNexis(R) Headnotes**

*Civil Rights Law > Implied Causes of Action*
*Governments > Federal Government > Claims By & Against*
*Governments > Federal Government > Employees & Officials*
[HN1] Actions against federal employees in their individual capacities for constitutional violations may be brought under Bivens.

2004 U.S. Dist. LEXIS 10617, *

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN2] Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record. Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, summary judgment is proper. Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. The substantive law will identify which facts are material, and only genuine disputes over material facts will preclude summary judgment. If the non-movant bears the burden of proof at trial, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is inappropriate. The non-movant cannot meet his burden with unsubstantiated assertions, conclusional allegations, or a scintilla of evidence. Furthermore, the court must view all of the evidence in the light most favorable to the non-movant.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN3] While pro se parties are normally accorded more leniency in the construction of their pleadings, a court need not afford a licensed attorney such leniency when the attorney appears pro se.

*Civil Rights Law > Implied Causes of Action*
*Governments > Federal Government > Employees & Officials*
*Torts > Vicarious Liability > Employers*
[HN4] It is well-settled that respondeat superior liability is not recognized in a Bivens action. Rather, a supervisory official may be held liable when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights.

*Governments > Local Governments > Claims By & Against*

*Governments > Local Governments > Employees & Officials*
*Torts > Business Torts > Negligent Hiring & Supervision*
[HN5] A failure to train may show the implementation of a deficient policy. However, a negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights.

*Torts > Business Torts > Negligent Hiring & Supervision*
[HN6] A showing of deliberate indifference usually requires proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights. For example, plaintiffs may present evidence showing a pattern of similar violations. However, a single incident of an alleged constitutional violation resulting from the failure to train may serve as a basis for liability so long as that violation was an obvious consequence of the failure to train. Finally, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation, and liability attaches only if there is direct causation between the policy and the injury.

*Banking Law > Regulatory Agencies > U.S. Office of Thrift Supervision*
*Civil Procedure > Summary Judgment > General Overview*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN7] A court may raise the issue of summary judgment sua sponte and may grant it sua sponte if the record does not support this claim.

*Torts > Intentional Torts > Malicious Prosecution > Civil Rights Actions*
[HN8] There is no freestanding constitutional right to be free from malicious prosecution. Rather, a malicious prosecution claim must specify the particular constitutional right allegedly violated: This conclusion in turn means that courts must insist on clarity in the identity of the constitutional violations asserted.

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Torts > Intentional Torts > Malicious Prosecution > Elements > General Overview*
[HN9] The United States Court of Appeals for the Fifth Circuit does not recognize a stand-alone claim for constitutional malicious prosecution.

2004 U.S. Dist. LEXIS 10617, *

*Evidence > Privileges > Self-Incrimination Privilege > General Overview*
[HN10] It is well-settled that trial witnesses are entitled to absolute immunity for their trial testimony. There is an exception to absolute immunity, however, when a witness is a "complaining witness," which is defined as one who instigates, encourages, or continues the prosecution.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Governments > Federal Government > Claims By & Against*
[HN11] Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine. Government officials are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity encompasses claims of conspiracy to commit an alleged violation.

*Civil Rights Law > Immunity From Liability > General Overview*
*Governments > Federal Government > Claims By & Against*
[HN12] Analyses of qualified immunity under 42 U.S.C.S. § 1983 apply equally to Bivens actions.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Governments > Federal Government > Claims By & Against*
[HN13] Once qualified immunity has been asserted, the plaintiff bears the burden of negating it. The plaintiff must show that there is a genuine issue as to whether the defendant (1) violated a constitutional right that (2) was clearly established at the time of the violation (3) through conduct that was objectively unreasonable. If the plaintiff fails to show a genuine issue with respect to each element, the official is entitled to qualified immunity.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN14] A defendant's due process rights are violated when the prosecution knowingly uses perjured testimony

at trial or allows untrue testimony to go uncorrected. To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material. If the prosecutor is aware of the untrue nature of the testimony, the prosecutor bears the burden of correcting that testimony. If the prosecutor is unaware of the untrue nature of the testimony, other members of the prosecutorial team who are aware may be liable for allowing the untrue testimony to go uncorrected.

*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Perjury > Elements*
*Criminal Law & Procedure > Trials > Examination of Witnesses > General Overview*
*Criminal Law & Procedure > Witnesses > General Overview*
[HN15] Contradiction in witnesses' statements may present a credibility question for the jury but it does not necessarily constitute perjury.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Law of the Case*
[HN16] The "law of the case" doctrine is an exercise of judicial discretion which merely expresses the practice of the courts generally to refuse to reopen what has been decided.

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN17] Ordinarily, Fed. R. Civ. P. 56 does not authorize summary judgment when a court is faced with conflicting sworn statements. However, when an sworn statement is conclusory and not based on personal knowledge, then it is entitled to no weight. Affidavits that do not comply with these requirements are legally insufficient and are entitled to no weight.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN18] The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Criminal Law & Procedure > Discovery & Inspection > Brady Materials*
[HN19] Whether evidence is exculpatory is a question for the court.

*Civil Rights Law > Implied Causes of Action*
*Governments > Federal Government > Employees & Officials*
[HN20] A Bivens action must be based upon the personal involvement of a particular individual, rather than group liability.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN21] Speculative or conclusory allegations are incompetent summary judgment evidence.

**COUNSEL:** John H Carney, Plaintiff, Pro se, Dallas, TX.

For James R Fisher, Plaintiff: James M Murphy, Law Office of James M Murphy, Dallas, TX.

For Office of Thrift Supervision, Defendant: Dirk S Roberts, Office of Thrift Supervision, Office of Chief Counsel, Washington, DC.

For Fred Teed, Rolf D Coburn aka Rolf Nordstrom, Karen Bruton, Ken Klein, Richard Riccabono, Brad Lambert, Defendants: Michael L Martinez, Crowell & Moring, Washington, DC. Robert A Hawkins, Patton Boggs, Dallas, TX. S Cass Weiland, Patton Boggs, Dallas, TX. Shari Ross Lahlou, Crowell & Moring, Washington, DC. Tara W Blanchard, Crowell & Moring, Washington, DC.

For Vincent G Fazzio, Jennifer Gant, Defendants: George M Kryder, Vinson & Elkins, [*2] Dallas, TX. Victoria S Salzmann, Vinson & Elkins, Dallas, TX.

**JUDGES:** IRMA CARRILLO RAMIREZ, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Irma C. Ramirez

**OPINION:**

FINDINGS,    CONCLUSIONS,    & RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Standing Order of Reference, filed May 12, 2003, which referred this case to the undersigned United States Magistrate Judge for pretrial management and recommendation on dispositive motions, the Court has before it the following pleadings:

1. *Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed,* filed November 17, 2003;

2. *Memorandum in Support of Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed,* filed November 17, 2003;

3. *Appendix to Memorandum in Support of Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed,* filed November 17, 2003;

4. *Plaintiffs' Response to Defendants Karen Bruton, Kenneth Klein, Bradford* [*3] *Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed's Motion for Summary Judgment,* filed February 20, 2004;

5. *Plaintiffs' Brief in Support of Their Response and Opposition to Defendants' Motion for Summary Judgment,* filed February 20, 2004;

6. *Plaintiffs' Objections to the Affidavits of Defendants Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed in Support of Defendants* [sic] *Motion for Summary Judgment,* filed February 20, 2004;

7. *Reply in Support of Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono*

*and Frederick Teed,* filed March 22, 2004;

8. *Motion for Summary Judgment of Defendants Vincent G. Fazzio and Jennifer Gant,* filed November 17, 2003;

9. *Brief in Support of Motion for Summary Judgment of Defendants Vincent G. Fazzio and Jennifer Gant,* filed November 17, 2003;

10. *Plaintiffs' Response to Defendants Fazzio & Gant's Motion for Summary Judgment,* filed February 20, 2004;

11. *Plaintiffs' Brief in Support of Their Response and Opposition to Defendants'* [sic] *Fazzio & Gant's* [*4] *Motion for Summary Judgment,* filed February 20, 2004;

12. *Plaintiff's Objections to the Affidavits of Defendants Fazzio & Gant in Support of Defendants* [sic] *Motion for Summary Judgment,* filed February 20, 2004;

13. *Reply Brief in Support of Motion for Summary Judgment of Defendants Vincent Fazzio and Jennifer Gant,* filed March 22, 2004; and

14. *Objections to Plaintiffs' Summary Judgment Evidence of Defendants Vincent Fazzio and Jennifer Gant,* filed March 22, 2004.

Based on the pleadings, the evidence submitted therewith, and the applicable law, the Court is of the opinion that the *Motion for Summary Judgment of Defendants Vincent G. Fazzio and Jennifer Gant* should be **GRANTED,** the *Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed* should be **GRANTED,** and this action should be **DISMISSED** with prejudice.

## I. BACKGROUND

### A. Facts

This is a *Bivens* n1 action against several federal employees in their individual capacities arising out of the March 22, 1995 convictions of John H. Carney and John R. Fisher ("Plaintiffs") [*5] for bank fraud, mail fraud, wire fraud, conspiracy, and making false statements to

government officials. Their convictions were later reversed, giving rise to this action. n2

n1 [HN1] Actions against federal employees in their individual capacities for constitutional violations may be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 397, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). *See Melear v. Spears,* 862 F.2d 1177, 1182 & n.5 (5th Cir. 1989).

n2 The background facts of this case are undisputed and taken largely from the Fifth Circuit Court of Appeals' opinion reversing Plaintiffs' convictions in the underlying criminal case, *United States v. Fisher,* 106 F.3d 622 (5th Cir. 1997).

In the summer of 1987, Plaintiffs formed a corporation and bank holding company, United States Savings Associates ("USSA"), in order to purchase a foundering savings and loan institution in Port Charlotte, Florida, named Bayside Savings and Loan Association [*6] ("Bayside"). The purchase was approved by the Office of Thrift Supervision ("OTS"), and Plaintiffs raised capital in part by offering repurchase agreements that allowed investors to purchase "units" in USSA. In return, Plaintiffs agreed to obtain refinancing of the investor's residential investments. If refinancing was not timely obtained, USSA was obligated to repurchase each investor's unit.

One investor, Bradley Branson ("Branson"), a professional basketball player living in Spain at the time, purchased two units through his accountant Michael Tannery ("Tannery"). Branson had allegedly granted Tannery full power of attorney, including the authority to enter into and manage his investments. Tannery invested in Bayside on Branson's behalf, but "overpaid" by mistakenly including an additional check for $ 20,000.

In 1989, Bayside began to suffer severe financial difficulties, due in part to the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). The FIRREA diminished Bayside's capital reserves from nearly $ 4,000,000 to approximately $ 800,000; Bayside's lending ability was correspondingly constrained. Some investors sought to recoup their investments, [*7] and Tannery attempted to recover the $ 20,000 overpayment on behalf of Branson. Tannery experienced difficulty in obtaining any money from Bayside, and Plaintiff Fisher allegedly told Tannery to apply for a loan in Branson's name, and Plaintiffs would repay it. Tannery applied for the loan and signed a letter of credit and promissory note in Branson's name, allegedly

without Branson's knowledge or approval. Branson claimed to have first learned of Tannery's loan application after the application was submitted in November 1990. (Pls. App. n3 at 12.) On January 14, 1991, Branson revoked Tannery's power attorney and granted power of attorney to Michael Jaccar ("Jaccar"). Branson authorized Jaccar to gather all information regarding Tannery's investment of Branson's money in Bayside.

n3 Plaintiffs have submitted separate responses and a joint appendix in response to both motions for summary judgment. The Court refers to the joint appendix as "App."

On March 13, 1992, an OTS employee (who is not named in this suit) [*8] interviewed Jaccar and reported the interview to OTS employee Frederick Teed. In the report, Jaccar stated that Branson was unaware of and did not authorize the loan, did not receive the loan proceeds, and was uncertain of the use of those proceeds. The report further stated that Branson believed that the funds "somehow went to Fisher and Carney," and that Plaintiffs were acting together with Tannery. (Pls. App. at 7.)

Subsequently, Federal Bureau of Investigation ("FBI") agents Vincent Fazzio and Jennifer Gant ("FBI Agents") opened a criminal investigation of Bayside and the Tannery/Branson loan. On August 26, 1992, Jaccar was interviewed by OTS employee Teed, Assistant United States Attorney Richard Kamp, and FBI agent Fazzio. (Pls. App. at 9.) During the interview, Jaccar reiterated Branson's statements that he did not authorize Tannery to take out the loan and he did not obtain the loan proceeds. (Pls. App. at 10.) The FBI memorialized the interview in a report on a standard "302" form used for recording witness interviews, and the parties refer to the report as the "Jaccar 302." On November 24, 1992, the FBI conducted a telephonic interview with Branson in which he substantiated [*9] Jaccar's statements. His interview was memorialized in a report referred to as the "Branson 302." (Pls. App. at 12.)

On February 1, 1993, OTS employee Rolf Nordstrom (then known as Rolf Colburn) notified Plaintiffs that the OTS would begin an "on-site examination" of Bayside. (Pls. App. at 13.) Plaintiffs allege that OTS employees Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono, and Frederick Teed ("OTS Defendants") either directly examined or supervised the examination of Bayside and its investors. During the same time, the FBI began a criminal investigation of Bayside.

On March 17, 1994, the Department of Justice ("DOJ") indicted Plaintiffs on charges arising from the FBI's investigation of the Tannery/Branson loan. The indictment charged Plaintiffs together and individually with conspiring to commit mail fraud, wire fraud, and bank fraud, and to make false statements and to obstruct the operation of the OTS. The prosecutors granted Tannery immunity in exchange for his testimony regarding Plaintiff Fisher's alleged offer to repay the Tannery/Branson loan. Tannery testified to the grand jury and at trial that Branson was aware of the loan, and that [*10] Branson's power of attorney authorized Tannery to sign Branson's name to the loan application. (Pls. App. at 6.) Tannery's testimony contravened the statements by Branson and Jaccar that Branson was unaware of the loan, did not request it, and did not authorize Tannery to sign his name to the loan application.

Before trial, Fisher's counsel requested all exculpatory evidence including any "information affecting the credibility of any person called as a witness by the Government." *Fisher,* 106 F.3d at 634. "The Government answered [that] it was unaware of any *Brady* material at that time." *Id.* It is undisputed that Plaintiffs were not provided with the Branson 302 at that time. After Tannery testified, the defense filed another motion seeking exculpatory evidence specifically related to Tannery and any purported power of attorney from Branson. On the last day of trial, the prosecution produced to the defense the Branson 302, which contained Branson's statements that he did not request that Tannery obtain a loan from Bayside, he was unaware any such loan was requested in his name, and he did not know what happened to the proceeds. *See id.* Plaintiff Carney's [*11] counsel moved for a new trial on grounds that the Branson 302 was exculpatory evidence because Branson's statements were inconsistent with Tannery's testimony and its late production prevented the defense from using it to impeach Tannery. The district court ruled that the Branson 302 was not inconsistent with Tannery's testimony and denied the motion for a new trial. The jury convicted Plaintiffs, and they were sentenced to prison.

Plaintiffs filed a joint appeal, and on February 13, 1997, the Fifth Circuit Court of Appeals reversed Plaintiffs' convictions on several grounds. *See Fisher,* 106 F.3d at 635 -- 36. The Fifth Circuit held that the late disclosure of the Branson 302 should have resulted in a new trial for Plaintiff Fisher. *See id.* The court did not, however, discuss the Branson 302 with respect to Plaintiff Carney. Plaintiff Carney's convictions were reversed on other grounds, including the district court's refusal to admit evidence of a successful arbitration and the admittance of an invalid conviction. The Fifth Circuit remanded both convictions for new trials. On October 3, 1997, the prosecution retried Plaintiffs. Plaintiffs were

acquitted of all [*12] charges except bank fraud, which had been dropped before trial.

## B. Procedural History

The procedural history of this case is long and convoluted. n4 On September 3, 1999, Plaintiffs filed this suit alleging constitutional and common law tort claims against the United States, the OTS, and the FBI as well as DOJ employees, FBI Agents, and OTS Defendants in their official and individual capacities. Plaintiffs' claims are based on their contentions that OTS Defendants improperly used the savings and loan regulatory examination process to assist the FBI and the DOJ in their investigation and prosecution of Plaintiffs, and that all defendants improperly withheld exculpatory evidence. (Third Am. Compl. at P140.) The district court substituted the United States for all individual federal employees with respect to Plaintiffs' common law claims and dismissed all claims against the United States, the OTS, the FBI, the DOJ employees, and Plaintiffs' official capacity claims against FBI Agents and OTS Defendants.

- - - - - - - - - - - - - - - -

n4 The procedural history of this case is more fully set forth in the Court's December 5, 2002 recommendation, which was adopted by the District Court by order dated March 31, 2003.

- - - - - - - - - - - - - - - -

[*13]

Subsequently, the United States, the FBI, and other federal employees filed separate motions to dismiss Plaintiff's claims. OTS Defendants and FBI Agents did not join in these motions or file their own motions to dismiss. On March 31, 2003, the district court dismissed all of Plaintiffs' claims against the FBI, the United States, and the other federal employees. Thus, Plaintiff's only remaining claims are those against OTS Defendants and FBI Agents.

Plaintiffs' 99-page Third Amended Complaint contains several claims, but it does not clearly identify the particular claims against each individual defendant. The Court held a case management conference on May 30, 2003, to determine which specific claims remained against FBI Agents and OTS Defendants. Based on the conference and the Court's review of the Third Amended Complaint, it is apparent that Plaintiffs do not allege each claim against each defendant individually. Although Plaintiffs' claims are often titled as being against "All Named Defendants," the body of each claim contains specific allegations against particular defendants. Thus, the Court will address the claims only as to the particular defendants against whom specific [*14] allegations are actually made.

OTS Defendants and FBI Agents assert the defense of qualified immunity with regard to the remaining claims against them. On July 22, 2003, the Court established a briefing schedule for dispositive motions on the issue of qualified immunity. Subsequently, Plaintiffs propounded written discovery requests, and FBI Agents and OTS Defendants jointly moved for protection from the requests on September 26, 2003. They argued that Plaintiffs' requests exceeded the scope of permissible discovery on the issue of qualified immunity. After a courtroom hearing on the motion on October 23, 2003, the Court determined that Plaintiffs could conduct limited discovery on the issue of qualified immunity with respect to their claims of withholding exculpatory evidence and subornation of perjury. In particular, discovery was allowed on the issues of whether FBI Agents and OTS Defendants deliberately concealed exculpatory evidence and whether OTS Defendants Lambert, Teed, and Nordstrom suborned perjury. Subsequently, Plaintiffs conducted written discovery and orally deposed each of the FBI Agents and OTS Defendants. Plaintiffs have provided transcripts of these depositions. [*15] (Pls. App. at 111 -- 118.)

On November 17, 2003, FBI Agents and OTS Defendants filed separate motions for summary judgment with supporting evidence. Plaintiffs filed separate responses with supporting evidence and a joint appendix referred to in both responses. Because FBI Agents' and OTS Defendants' motions relate to substantially the same claims and argue similar grounds for summary judgment, and Plaintiffs cite substantially the same evidence in their responses, the Court addresses the motions together in the interests of judicial economy. The motions are now before the Court and ripe for determination.

## II. ANALYSIS

### A. Summary Judgment Standard

This case involves issues of law and fact. [HN2] "Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." *Burlington Northern and Santa Fe Ry. Co. v. Brotherhood of Maintenance of Way Employees*, 93 F. Supp. 2d 751, 756 (N.D. Tex. 2000). "Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, [*16] summary judgment is proper." *Id.* Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "The substantive law will identify which facts are material[,]" and only genuine disputes about material

facts will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the non-movant bears the burden of proof at trial, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990). Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is inappropriate. *Little,* 37 F.3d at 1075. The non-movant cannot meet his burden with unsubstantiated assertions, conclusional allegations, or a scintilla of evidence. *See id.* Furthermore, the court must view all of the evidence in the light most favorable to the non-movant. [*17] n5 *See Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir. 1996).

n5 Although Plaintiff Carney is proceeding *pro se,* he is an attorney who has been licensed by the State of Texas since 1981. [HN3] While *pro se* parties are normally accorded more leniency in the construction of their pleadings, *see Estelle v. Gamble,* 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), the Court need not afford a licensed attorney such leniency when the attorney appears *pro se. See Harbulak v. Suffolk County,* 654 F.2d 194, 198 (2d Cir. 1981) (holding that the plaintiff "is a practicing attorney and, therefore, cannot claim the special consideration which courts customarily grant to *pro se* parties"); *Tindall v. Gibbons,* 156 F. Supp. 2d 1292, 1294 n.1 (M.D. Fla. 2001) (same); *DeFina v. Latimer,* 79 F.R.D. 5, 7 (E.D.N.Y. 1997) (same). Plaintiff Fisher is represented by counsel. Accordingly, the Court need not extend the same leniency to Plaintiffs' pleadings that it normally extends to other *pro se* pleadings.

[*18]

**B. Supervisory Liability**

*1. Respondeat Superior*

Plaintiffs expressly assert claims under the doctrine of respondeat superior n6 against OTS Defendants Riccobono and Klein. [HN4] It is well-settled that respondeat superior liability is not recognized in a *Bivens* action. *See Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir. 1998) (recognizing that "there is no doctrine of respondeat superior in *Bivens* actions") (citing *Abate v. Southern Pac. Transp. Co.,* 993 F.2d 107, 110 (5th Cir. 1993) (citing cases)). "Rather, a supervisory official may be held liable when he is either personally involved in the acts causing the deprivation of a person's constitu-

tional rights, or 'if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights.'" *Johnson v. Ramos,* 2003 U.S. Dist. LEXIS 2027, 2003 WL 22946476, at *5 (N.D. Tex. February 11, 2003) (quoting *Cronn,* 150 F.3d at 544). Accordingly, to the extent that Plaintiffs assert a cause of action under the doctrine of respondeat superior, summary judgment should be granted.

n6 Despite express invocation of this doctrine, Plaintiffs do not seek to hold OTS Defendants Riccobono and Klein liable for the conduct of subordinate OTS Defendants. Rather, Plaintiffs allege that OTS Defendants Riccobono and Klein were personally involved in violating their constitutional rights and that they implemented a deficient policy by failing to train the other OTS Defendants with respect to limits on the gathering of evidence in the OTS regulatory examination. (Third Am. Compl. at 95; Resp. at 32 -- 35.) The Court separately addresses these claims below.

[*19]

*2. Deficient Policy*

Plaintiffs allege that OTS Defendants Riccobono and Klein implemented a deficient policy that deprived them of their constitutional rights. (Third Am. Compl. at 95.) Plaintiffs' complaint alleges that these defendants are liable for "policies and failure to implement policies[,]" but it does not identify any particular "policies." *See id.* In Plaintiffs' responses, they allege that the offending "policy" was OTS Defendants Riccobono's and Klein's failure to train other OTS Defendants regarding OTS Regulatory Bulletin 18 -- 4. (Resp. at 32 -- 34.) OTS Regulatory Bulletin 18 -- 4, advises OTS employees against the improper gathering of evidence for the purpose of making a criminal referral:

The OTS's investigative powers may *not* be used to conduct a criminal investigation or to gather documents for the purposes of making a criminal referral. . . . However, when information obtained for an authorized civil purpose is sufficient to provide a reasonable factual basis that a crime has been or may be committed . . . OTS personnel in the District or in Enforcement will make appropriate criminal referrals, using the OTS's Form 366.

(Resp. [*20] App. at Ex. 29.) Plaintiffs allege that OTS Defendants Riccobono and Klein were responsible for ensuring compliance with this bulletin, that they failed to train other OTS Defendants in its commands, and that the failure resulted in the "highly likely consequence" that exculpatory evidence would be withheld with "deliberate indifference" to Plaintiffs' constitutional rights. *See id.* at 34 -- 35.

[HN5] A failure to train may show the implementation of a deficient policy. *See City of Canton v. Harris,* 489 U.S. 378, 380, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) (holding that a municipality can be held liable under § 1983 "for constitutional violations resulting from its failure to train municipal employees."), *cited in Bradley v. United States,* 164 F. Supp. 2d 437, 453 (D.N.J. 2001) (explaining that a failure to train claim under *Bivens* requires that the plaintiff show "the officers acted pursuant to a [federal] custom or policy not to adequately train or supervise."). However, a negligent failure to train is insufficient; a plaintiff must show that the failure to train was done with "deliberate indifference" to his rights. *See Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 407, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997) [*21] ("A showing of simple or even heightened negligence will not suffice."); *accord Ting v. United States,* 927 F.2d 1504, 1512 (9th Cir. 1991) (noting that an "inadequacy of police training may serve as a basis for liability under section 1983 or *Bivens* 'only where the failure to train amounts to deliberate indifference'").

[HN6] A showing of deliberate indifference usually requires "proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights[.]" *Thompson v. Upshur County, TX,* 245 F.3d 447, 459 (5th Cir. 2001). For example, Plaintiffs may present evidence showing a pattern of similar violations. *See id.* "However, a single incident of an alleged constitutional violation resulting from the failure to train may serve as a basis for liability so long as that violation was an obvious consequence of the failure to train." *Barnes v. Barnes,* 2004 U.S. Dist. LEXIS 23180, 2004 WL 691202, at *10 (N.D. Tex. March 30, 2004) (citing *Brown v. Bryan County,* 219 F.3d 450, 454, 460 (5th Cir. 2000)). Finally, the inadequacy of training must be obvious and obviously likely to result in a constitutional [*22] violation, and liability attaches only if there is direct causation between the policy and the injury. *See Thompson,* 245 F.3d at 459; *see also Brown,* 219 F.3d at 460.

Plaintiffs do not present evidence of a pattern of violations. Rather, Plaintiffs allege that the violations to their rights were the obvious consequences of the alleged failure to train OTS Defendants regarding OTS Regulatory Bulletin 18 -- 4. (Resp. at 33 -- 34.) Plaintiffs cite the deposition testimony of OTS Defendants Riccobono and Klein as evidence of their failure to train. (Resp. at 33 -- 34; App. at 29.) The cited portions of these defendants' deposition testimony reflect that at the time of the OTS examination and FBI investigation, neither defendant implemented or trained other OTS Defendants regarding OTS Regulatory Bulletin 18 -- 4. (Resp. at 33 -- 34.) However, this bulletin does not relate to Plaintiffs' claims that OTS Defendants withheld exculpatory evidence or suborned perjury. Indeed, the bulletin concerns the gathering of information during an OTS regulatory examination, not the handling of evidence during a criminal proceeding. Plaintiffs do not explain how the failure [*23] to train other OTS Defendants on this bulletin would have resulted in the "obvious consequence" of violating Plaintiffs' rights.

Viewing all evidence in the light most favorable to Plaintiffs, Plaintiffs have failed to show a genuine issue of law or fact regarding whether the alleged failure to train on this bulletin violated their rights. Because Plaintiffs claim that the offending "policy" was OTS Defendants Riccobono's and Klein's failure to train, and Plaintiffs did not establish a failure to train, Plaintiffs have failed to show a deficient policy. Accordingly, OTS Defendants Riccobono and Klein should be granted summary judgment on Plaintiffs' claims with regard to the implementation of a deficient policy. *See id.*

## C. Malicious Prosecution

Plaintiffs assert constitutional malicious prosecution claims against OTS Defendants and FBI Agents. n7 (Third Am. Compl. at 75 -- 77.) OTS Defendants move for summary judgment on Plaintiffs' constitutional malicious prosecution claims. (OTS Defs. Br. at 12 -- 13.) FBI Agents do not move for summary judgment on Plaintiffs' constitutional malicious prosecution claims. Nevertheless, [HN7] the Court may raise the issue of summary judgment [*24] *sua sponte* and may grant it *sua sponte* if the record does not support this claim. *See Ficq v. Texas Instruments Inc.,* 2004 WL 576057, at *1 (N.D. Tex. March 1, 2004) ("it is well settled that a judge not only may raise summary judgment *sua sponte,* he may grant it *sua sponte.*") (citing *Missouri Pac. R.R. v. Harbison-Fischer Mfg. Co.,* 26 F.3d 531, 539 (5th Cir. 1994)).

n7 OTS Defendants and FBI Agents both argue that Plaintiffs' malicious prosecution claims are not against them. In their Third Amended Complaint, Plaintiffs assert claims for "STATE AND FEDERAL" malicious prosecution against "ALL NAMED DEFENDANTS." Plaintiffs' state law malicious prosecution claims were dismissed

by a previous Order. (9/13/00 Ord. at 6 -- 7.) The Court assumes for the purposes of this analysis that Plaintiffs' constitutional malicious prosecution claims are alleged against all OTS Defendants and FBI Agents.

[HN8] There is no "freestanding constitutional right to be free from malicious prosecution[. [*25] ]" *Castellano v. Fragozo*, 352 F.3d 939, 941 (5th Cir. 2003) *(en banc)*, *cited in Hamilton v. Collett*, 83 Fed. Appx. 634, 636, 2003 WL 22965650, at *2 (5th Cir. 2003) (explaining that "this court has recently held that a claim of malicious prosecution standing alone does not violate the United States Constitution."). Rather, a malicious prosecution claim must specify the particular constitutional right allegedly violated: "This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted." *Castellano*, 352 F.3d at 941. Despite three opportunities to amend their complaint, Plaintiffs allege only a stand-alone constitutional claim for malicious prosecution. Because [HN9] the Fifth Circuit does not recognize a stand-alone claim for constitutional malicious prosecution, this claim fails as a matter of law. *See id.* Accordingly, OTS Defendants and FBI Agents should be granted summary judgment on Plaintiffs' claims for "federal" malicious prosecution. *See id.*

**D. Perjury**

Plaintiffs assert perjury claims against OTS Defendants Nordstrom and Lambert. (Third Am. Compl. at [*26] 80 -- 86.) OTS Defendants Nordstrom and Lambert move for summary judgment on Plaintiffs' perjury claims on grounds that they testified truthfully and they are otherwise entitled to absolute immunity.

[HN10] It is well-settled that trial witnesses are entitled to absolute immunity for their trial testimony. *See Charles v. Wade*, 665 F.2d 661, 666 (5th Cir. 1982) (finding absolute immunity from *Bivens* action for trial witnesses); *see also Briscoe v. LaHue*, 460 U.S. 325, 331, 334, 75 L. Ed. 2d 96, 103 S. Ct. 1108 (1983) (holding that trial witnesses are shielded by absolute immunity). There is an exception to absolute immunity, however, when a witness is a "complaining witness," which is defined as one who "instigates, encourages, or continues the prosecution[.]" *Keko v. Hingle*, 318 F.3d 639, 643 (5th Cir. 2003).

Plaintiffs argue that OTS Defendants Nordstrom and Lambert were complaining witnesses. (Resp. at 2-4; Third Am. Compl. at PP185 -- 187.) Plaintiffs allege that OTS Defendants Nordstrom and Lambert utilized the regulatory examination process as a means of instigating and furthering the criminal investigation and prosecution of Plaintiffs. However, [*27] Plaintiffs fail to present

any evidence showing that OTS Defendants Nordstrom and Lambert instigated, encouraged, or continued Plaintiffs' prosecution. Plaintiffs' conclusory allegations that OTS Defendants Nordstrom and Lambert were aware of an ongoing criminal investigation and made documents available to the FBI are insufficient to create a genuine issue of fact or law showing that these defendants instigated or furthered the prosecution. *See Keko*, 318 F.3d at 643. Thus, Plaintiffs have failed to show that OTS Defendants Nordstrom and Lambert were complaining witnesses.

Moreover, even assuming for purposes of this motion that OTS Defendants Nordstrom and Lambert defendants were complaining witnesses, Plaintiffs have presented no evidence that they testified falsely. Plaintiffs allege that these defendants testified falsely about the extent of coordination between the OTS regulatory examination and the FBI's criminal investigation. (Third Am. Compl. at 80 -- 86; Fisher Decl. at 20.) Specifically, Plaintiffs contend that OTS Defendants Nordstrom and Lambert presented testimony that mischaracterized or misrepresented OTS Defendants' coordination with the FBI and Plaintiffs' [*28] filings with the OTS. *See id.* However, Plaintiffs cite no evidence showing that OTS Defendants Nordstrom's and Lambert's testimony was actually false. Accordingly, Plaintiffs have not shown a genuine issue or fact or law as to whether OTS Defendants Nordstrom and Lambert were complaining witnesses or testified falsely. Thus, OTS Defendants Nordstrom and Lambert should be granted summary judgment on Plaintiffs' perjury claims.

**E. Subornation of Perjury**

Plaintiffs allege claims for subornation of perjury against all OTS Defendants and FBI Agent Fazzio, but not FBI Agent Gant. (Third Am. Compl. at 71 -- 73.) OTS Defendants move for summary judgment on Plaintiffs' subornation of perjury claims on the grounds that they are entitled to qualified immunity. FBI Agent Fazzio has not moved for summary judgment on Plaintiffs' subornation of perjury claim against him. Nevertheless, the Court may raise the issue of summary judgment *sua sponte* and may grant it *sua sponte* if this claim is unsupported by the record. *See Ficq*, 2004 WL 576057, at *1.

*1. Qualified Immunity Standard*

[HN11] "Public officials acting within the scope of their official duties [*29] are shielded from civil liability by the qualified immunity doctrine." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

2004 U.S. Dist. LEXIS 10617, *

have known." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)); *see also Jones v. Soles,* 2001 U.S. Dist. LEXIS 21079, 2001 WL 1636362, at *3 (N.D. Tex. Dec. 18, 2001). Qualified immunity encompasses claims of conspiracy to commit an alleged violation. *See Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 279-80 (5th Cir. 2001) (finding that because the police office "is entitled to qualified immunity for his actions," "the § 1983 conspiracy claim based on them must fail."). n8

n8  [HN12] Analyses of qualified immunity under 42 U.S.C. § 1983 apply equally to *Bivens* actions. *See Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999) (recognizing that the analysis is the same).

[*30]

[HN13] Once qualified immunity has been asserted, the plaintiff bears the burden of negating it. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir. 1994). The plaintiff must show that there is a genuine issue as to whether the defendant "(1) violated a constitutional right that (2) was clearly established at the time of the violation (3) through conduct that was objectively unreasonable." *Mowbray,* 274 F.3d at 279-80; *see also Weddle v. Ferrell,* 2000 U.S. Dist. LEXIS 2659, 2000 WL 256891, at *3 n.1 (N.D. Tex. March 6, 2000) (noting "Some panels of the Fifth Circuit have condensed the qualified immunity analysis into two steps, but the relevant points of inquiry in each analysis are the same."). If the plaintiff fails to show a genuine issue with respect to each element, the official is entitled to qualified immunity. *See Mowbray,* 274 F.3d at 280 (finding that a police officer was entitled to qualified immunity because the plaintiff had failed to show a violation to a constitutional right).

### 2. Failure to Correct

Plaintiffs allege that OTS Defendants and FBI Agent Fazzio "were in possession of the examination workpapers" of OTS [*31] Defendant Lambert "that wholly contradicted, impeached and demonstrated that Tannery was committing perjury before the trial jury and they sat silent as the jury considered such evidence in convicting Plaintiffs on Count 10 of the indictment." (Resp. at 29; Third Am. Compl. at 71 -- 73.) Plaintiffs claim that the failure to correct Tannery's testimony resulted in subornation of perjury.

[HN14] A defendant's due process rights are violated when the prosecution knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *See Faulder v. Johnson,* 81 F.3d 515, 519 (5th Cir. 1996). "To obtain relief, the defendant must show

that (1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material." *Id.* (citing *Kirkpatrick v. Whitley,* 992 F.2d 491, 497 (5th Cir.1993)). If the prosecutor is aware of the untrue nature of the testimony, the prosecutor bears the burden of correcting that testimony. *See Napue v. Illinois,* 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959) (finding that a "failure of State to correct testimony known to be false violates due process"). If the prosecutor is unaware [*32] of the untrue nature of the testimony, other members of the prosecutorial team who are aware may be liable for allowing the untrue testimony to go uncorrected. *See Burge v. Parish of St. Tammany,* 187 F.3d 452, 480 n.11 (5th Cir. 1999) ("suborning perjury and concealing exculpatory evidence by police officers were constitutional violations."); *see also Luna v. Beto,* 391 F.2d 329, 332 (5th Cir. 1967) (holding that the state was liable for allowing the testimony to go uncorrected based on a police officer's knowledge of the false nature of the testimony).

With regard to the first element of their claim, Plaintiffs must present evidence showing that Tannery's testimony was actually false in order to maintain their subornation of perjury claims. *See Faulder,* 81 F.3d at 519. Plaintiffs refer the Court to the Fifth Circuit's opinion in *Fisher* as evidence that Tannery's testimony was false. However, the Fifth Circuit did not state that Tannery's testimony was false, but rather found that the Branson 302 "was directly contradictory to what Tannery testified to both in the grand jury hearing and at trial." *Fisher,* 106 F.3d at 634. [*33] Plaintiffs conflate falsity with contradiction. [HN15] Contradiction in witnesses' statements may present a credibility question for the jury but it does not necessarily constitute perjury. *See United States v. Brown,* 634 F.2d 819, 827 (5th Cir. 1981) (explaining that the proof that a witness's "testimony is challenged by another witness or is inconsistent with prior statements" is insufficient to establish due process violation); *see also United States v. Miranne,* 688 F.2d 980, 989 (5th Cir. 1982) ("finding that the differing testimony of two government witnesses presented at most a credibility question for the jury"); *United States v. Martinez-Mercado,* 888 F.2d 1484, 1492 (5th Cir. 1990) (contradictory testimony, standing alone, is not tantamount to perjury); *Maki v. Dretke,* 2004 U.S. Dist. LEXIS 5600, 2004 WL 719146, at *1 (N.D. Tex. April 1, 2004) (same). Thus, Plaintiffs have not shown that Tannery's testimony was actually false.

Moreover, Plaintiffs fail to present evidence showing a genuine issue of fact on the second element, that OTS Defendants and FBI Agent Fazzio knew of Tannery's testimony when it occurred. All OTS Defendants have provided [*34] declarations stating that they did not plan nor encourage Tannery's testimony, nor were

they contemporaneously aware of it. (Bruton Decl. at P9; Klein Decl. at P5; Lambert Decl. at P12; Nordstrom Decl. at P12; Riccobono Decl. at P5; Teed Decl. at P10.) In response, Plaintiffs allege that "Defendants coerced Tannery into testifying falsely against Plaintiffs." (Third Am. Compl. at 73.) However, Plaintiffs have failed to present evidence supporting this allegation or showing that OTS Defendants and FBI Agent Fazzio knew of Tannery's testimony when it occurred. Thus, Plaintiffs fail to show a genuine issue of fact or law on two elements of their claims that OTS Defendants and FBI Agent Fazzio suborned perjury. Consequently, OTS Defendants and FBI Agent Fazzio are entitled to summary judgment on Plaintiffs' claims for subornation of perjury.

### F. Withholding Exculpatory Evidence

Plaintiffs also allege that all OTS Defendants, except Riccobono, and both FBI Agents withheld and conspired to withhold exculpatory evidence. (Third Am. Compl. at 65 -- 75.) OTS Defendants and FBI Agents move for summary judgment on grounds of qualified immunity. As previously set forth, Plaintiffs must [*35] show a genuine issue of law or fact regarding whether OTS Defendants or FBI Agents "(1) violated a constitutional right that (2) was clearly established at the time of the violation (3) through conduct that was objectively unreasonable" to overcome qualified immunity *Mowbray*, 274 F.3d at 279-80; *see also Foster*, 28 F.3d at 429.

#### 1. OTS Defendants

OTS Defendants argue that as a matter of law, they are not responsible for the withholding of exculpatory evidence and their actions were objectively reasonable because they submitted all evidence to the FBI. OTS Defendants have proffered declarations stating that they made available to the FBI all documents related to their regulatory examination of Bayside, and no materials were withheld from production to the FBI or the prosecutors. (OTS Defs. App. at 1 -- 6.) Plaintiffs contend that OTS Defendants withheld the Branson 302, the Jaccar 302, other documents containing correspondence with Jaccar and Tannery regarding Tannery's alleged forgery, and documents regarding an investigation of fraud charges against governmental witness Joseph Courrege. (Third Am. Compl. at PP132 -- 143, 155 -- 159.) As [*36] evidence of such withholding, Plaintiffs refer the Court to the Fifth Circuit's opinion in *Fisher*, Plaintiff Fisher's declaration, John Roger Coston's declaration n9, and a 1040-page, two-volume appendix.

n9 Coston is a former agent with the Drug Enforcement Administration. His declaration presents his opinions on the manner in which a fed-

eral law enforcement officer should handle exculpatory evidence.

Plaintiffs argue that *Fisher*, which reversed Plaintiffs' convictions, stands as the "law of the case" that OTS Defendants withheld exculpatory evidence. (Resp. at 36 -- 38.) [HN16] The "law of the case" doctrine "is an exercise of judicial discretion which merely expresses the practice of the courts generally to refuse to reopen what has been decided." *United States v. Phipps*, 368 F.3d 505, 2004 U.S. App. LEXIS 8176, 2004 WL 880154, at *3 (5th Cir. 2004). Although the Fifth Circuit found in *Fisher* that the Branson 302 was exculpatory, it did not address who was responsible for its late disclosure. n10 *See Fisher*, 106 F.3d at 635. [*37] Rather, the Fifth Circuit referred to the "Government" as the responsible party:

> In its indictment against Carney, Fisher, Noebel and Hughes, *the Government* charged they conspired to commit mail fraud, wire fraud, and bank fraud, and also conspired to make false statements to and obstruct the operation of the FHLBB and Office of Thrift Supervision. . . . The Government's failure to release this material information to the defense was error, and should have resulted in a new trial for Fisher.

*Id.* at 627, 635 (emphasis added). Thus, the *Fisher* court did not determine which members of the prosecution team withheld exculpatory evidence. Accordingly, *Fisher* does not stand as "law of the case" with respect to Plaintiffs' allegations that *OTS Defendants* were responsible for withholding exculpatory evidence.

n10 Moreover, *Fisher* addressed only whether disclosure of the Branson 302 was a violation of Plaintiff Fisher's right to exculpatory evidence: "The Government's failure to release [the Branson 302] to the defense was error, and should have resulted in a new trial for Fisher." *Fisher*, 106 F.3d at 632-34. *Fisher* did not address whether the disclosure of the Branson 302 was a violation of Plaintiff Carney's rights.

[*38]

#### a. OTS Defendants Teed, Lambert, and Nordstrom

Plaintiffs also refer the Court to Plaintiff Fisher's declaration, which repeats fifteen pages of argument from Plaintiffs' brief and states that OTS Defendants withheld exculpatory "e-mail traffic" from the FBI:

> OTS personnel Mr. Teed, Mr. Lambert, Mr. Colburn [Nordstrom] with held [sic] evidence from the FBI investigators by with holding [sic] all the e-mail traffic provided in this case from the investigators. The documents contain significant *Brady* and *Giglio* material. I have personal knowledge of this from witnessing their deposition statements and reviewing the nearly 40,000 thousand [sic] images provided as discovery in this case. Their [OTS Defendants'] statements in the [sic] affidavits indicating they provided all the relevant documentation available to the FBI and Prosecutors is [sic] false.

(Fisher Decl. at 20.) Each OTS Defendant has submitted a declaration stating that he or she made available to FBI Agents all documents in their possession, control, or custody that were related to Plaintiffs. (OTS Defs. App. at 1 -- 6.) They each claim that they did not decide what evidence was [*39] disclosed to Plaintiffs. *Id.*

Plaintiff Fisher's declaration conflicts with OTS Defendants' declarations. [HN17] Ordinarily, Rule 56 does not authorize summary judgment when a court is faced with conflicting sworn statements. *See Bowen v. GDMFC, Inc.,* 1999 U.S. Dist. LEXIS 3824, 1999 WL 172291, at *4 (N.D. Tex. March 22, 1999) (citing *Farbwerke Hoechst A.G. v. M/V "Don Nicky",* 589 F.2d 795, 798 (5th Cir. 1979) ("In making its [summary judgment] determination, the court may not weigh conflicting affidavits to resolve disputed fact issues.")). However, when an sworn statement is conclusory and not based on personal knowledge, then it is entitled to no weight. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 at 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Akin v. Q-L Investments, Inc.,* 959 F.2d 521, 530 (5th Cir. 1992) (explaining that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein.'"). [*40] "Affidavits that do not comply with these requirements are legally insufficient and are entitled to no weight." *Williamson v. United States Dep't of Agriculture* 815 F.2d 368 at 383.

OTS Defendants argue that Plaintiff Fisher's declaration is conclusory and fails to meet the requirements of FED. R. CIV. P. 56(e), and thus, should be accorded no weight. (OTS Defs. Reply at 2 n.2.) Although Plaintiff Fisher refers to and has provided OTS Defendants Teed's, Lambert's, and Nordstrom's deposition transcripts, he does not cite the e-mails that were allegedly withheld nor a specific portion of these transcripts. Rather, Plaintiff Fisher makes the conclusory assertion that these e-mails contain "significant" exculpatory evidence as established by deposition testimony and some 40,000 images. (Fisher Decl. at 20.) The Court is not required to search the record to find support for Plaintiff Fisher's averments; rather, it "need rely only on those portions of the submitted documents to which the non-moving party directs the Court's attention." *Barnes,* 2004 WL 691202, at *6; *see also Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) [*41] [HN18] ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."). [HN19] Whether evidence is exculpatory is a question for the Court, and Plaintiff Fisher does not direct the Court's attention to any particular allegedly exculpatory e-mail. In fact, Plaintiff Fisher fails to direct the Court's attention to *any* evidence showing that OTS Defendants Teed, Lambert, and Nordstrom withheld exculpatory evidence. It does not appear from Plaintiff Fisher's affidavit that he has personal knowledge of the withholding of any exculpatory evidence by these defendants.

Accordingly, Plaintiff Fisher's statement that OTS Defendants Teed, Lambert, and Nordstrom withheld exculpatory e-mails does not appear to be based on his personal knowledge, and the Court strikes this statement from the summary judgment evidence. *See Strain v. Kaufman County Dist. Attorney's Office,* 23 F. Supp. 2d 685, 696 (N.D. Tex. 1998) (striking statements that were "self-serving and recounting alleged occurrences of which Plaintiffs have no personal knowledge in violation of FED. R. CIV. P. 56(e) [*42] .").

**b. All OTS Defendants**

Plaintiffs also allege that all OTS Defendants are liable for the withholding of Plaintiffs' Exhibits 1 -- 17 and 19 -- 23 as part of the "prosecutorial team." (Fisher Decl. at 8 -- 17.) [HN20] A *Bivens* action must be based upon the personal involvement of a particular individual, rather than group liability. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 485, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter the officer."); *see also Rivera v. Commandant of the United States Marine Corps,* 2000 U.S. App. LEXIS 26672, 2000 WL 1581001, at *1 (D.C. Cir. Sept. 26, 2000) (noting that "to the extent appellant

is suing a federal official in his individual capacity, the complaint does not allege any personal involvement") (citing *Simpkins v. District of Columbia Gov't,* 323 U.S. App. D.C. 312, 108 F.3d 366, 369 (D.C. Cir. 1997) (explaining that the complaint must allege personal involvement by government official in events giving rise to constitutional claim); *Cameron v. Thornburgh,* 299 U.S. App. D.C. 228, 983 F.2d 253, 258 (D.C. Cir. 1993) (same)); *accord Davis v. United States,* 2004 U.S. Dist. LEXIS 2551, 2004 WL 324880, at *9 (S.D.N.Y. Feb. 19, 2004) [*43] ("Davis' failure to allege that Delia was personally involved in the complained of acts is fatal to his claim.").

Plaintiffs have presented no evidence showing personal involvement by each OTS Defendant with respect to the handling of Plaintiffs' Exhibits 1 -- 17 and 19 -- 23. Rather, Plaintiffs base their claims on impermissible allegations of group liability. Thus, even accepting Plaintiffs' allegations as true and construing all of the evidence in Plaintiffs' favor, allegations of group liability fail as a matter of law in a *Bivens* action. *See F.D.I.C.,* 510 U.S. at 485; *see also Cameron,* 983 F.2d at 258.

Plaintiffs have failed to present competent summary judgment evidence showing that a genuine issue of fact or law exists as to whether each OTS Defendant withheld exculpatory evidence. Accordingly, each OTS Defendant is entitled to qualified immunity with regard to Plaintiffs' claims for withholding of exculpatory evidence, and summary judgment should be granted in favor of OTS Defendants on these claims. *See Mowbray,* 274 F.3d at 280 (finding that a police officer was entitled to qualified immunity [*44] because the plaintiff had failed to show a violation to a constitutional right). n11

---

n11 OTS Defendants should likewise be granted summary judgment on Plaintiffs' claim for conspiracy to withhold exculpatory evidence because OTS Defendants are qualifiedly immune from the underlying claim. *See Mowbray,* 274 F.3d at 280.

---

## 2. FBI Agents

FBI Agents assert qualified immunity with regard to Plaintiffs' *Brady* violation claims. Plaintiffs must show a genuine issue with regard to whether FBI Agents were responsible for withholding exculpatory evidence. *See Mowbray,* 274 F.3d at 280 (concluding that the police officer was entitled to qualified immunity because the plaintiff had failed to show that *the officer* violated any constitutional right); *see also Weddle,* 2000 U.S. Dist. LEXIS 2659, 2000 WL 256891, at *3 (noting that the

plaintiff had stated a claim that *the police officer* violated his constitutional rights).

Plaintiffs again refer the Court to the Fifth Circuit's opinion [*45] in *Fisher* as evidence that FBI Agents withheld exculpatory evidence in violation of Plaintiffs' constitutional rights. As explained above, the Fifth Circuit did not attribute the untimely disclosure of the Branson 302 to any particular individual. *See Fisher,* 106 F.3d at 634-35. Accordingly, *Fisher* does not necessarily show a genuine issue with regard to whether FBI Agents were responsible for the late disclosure of the Branson 302.

Plaintiffs also refer the Court to Plaintiff Fisher's declaration. Plaintiff Fisher avers that FBI Agents decided what evidence would be provided to Plaintiffs and that FBI Agents provided all evidence to Plaintiffs:

> At all relevant times during pre trial [sic] discovery for both criminal trials, I only obtained discovery and access to materials from the FBI through [FBI Agents]. At no time was I ever provided with discovery or access to evidentiary material by the prosecutors or US [sic] Attorney's office. The FBI, Gant and Fazio [sic], determined what materials were made available to our defense team. . . . The FBI agents decided what they produced[,] not the prosecutors[,] based upon my personal knowledge [*46] at the time.

(Fisher Decl. at 18.) FBI Agents have provided affidavits stating that they "did not make or participate in the decisions [regarding] . . . what documents, evidence, or other materials would be turned over to [Plaintiffs]. Such decisions were made exclusively by the prosecutors and/or their supervisors in the case." (FBI Agents App. at 1 -- 2.)

Plaintiff Fisher's declaration conflicts with FBI Agents' affidavits. As discussed more fully with respect to the OTS Defendants, if Plaintiff Fisher's declaration is conclusory and not based on personal knowledge, then it is entitled to no weight. *See Lujan,* 497 U.S. at 888; *see also Akin,* 959 F.2d at 530; *Williamson,* 815 F.2d at 383. FBI Agents object to Plaintiff Fisher's declaration as conclusory, speculative, and made without his personal knowledge in violation of Rule 56. While Plaintiff Fisher may have personal knowledge that FBI Agents physically transferred evidence to him or his defense team, he does not explain the basis for his alleged personal knowledge regarding who made the decision to disclose exculpatory evidence. Plaintiffs have identified no sup-

porting [*47] evidence in the record that FBI Agents made the disclosure decision. Plaintiff Fisher's statement that FBI Agents made the decision appears to be conclusory and speculative rather than based on his personal knowledge. [HN21] Speculative or conclusory allegations are incompetent summary judgment evidence. *See Lujan,* 497 U.S. at 888, *quoted in Savariego v. Melman,* 2002 U.S. Dist. LEXIS 8563, 2002 WL 1788012, at *2 n.4 (N.D. Tex. May 10, 2002) (not recognizing unauthenticated hearsay in an affidavit as competent summary judgment evidence) (Lynn, J.). Because Plaintiff Fisher's allegation that FBI Agents decided what would be disclosed is without support in the record, the Court sustains FBI Agents' objections, and strikes this statement from the summary judgment evidence. *See Strain,* 23 F. Supp. 2d at 696 (striking statements as "self-serving and recounting alleged occurrences of which Plaintiffs have no personal knowledge in violation of FED. R. CIV. P. 56(e).").

Plaintiffs present no other evidence supporting their contention that FBI Agents withheld exculpatory evidence. Because Plaintiffs have failed to identify any competent [*48] summary judgment evidence in the record that raises a genuine issue of fact or law regarding whether FBI Agents withheld exculpatory evidence, Plaintiffs have failed to show that FBI Agents violated their constitutional rights. Accordingly, FBI Agents are entitled to qualified immunity from Plaintiffs' claims that they withheld exculpatory evidence. *See Mowbray,* 274 F.3d at 280 (finding that a police officer was entitled to qualified immunity because the plaintiff had failed to show a violation to a constitutional right). Because the FBI Agents are entitled to qualified immunity from the underlying claim, they are also entitled to immunity from Plaintiffs' claim for conspiracy to withhold exculpatory evidence. *See id.* Accordingly, FBI Agents' motion for summary judgment on the basis of qualified immunity should be granted.

## III. RECOMMENDATION

For the foregoing reasons, the court **RECOMMENDS** that the *Motion for Summary Judgment on Behalf of Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono and Frederick Teed* be **GRANTED,** the *Motion for Summary Judgment of Defendants Vincent G. Fazzio and Jennifer Gant* be [*49] **GRANTED,** and this action be **DISMISSED** with prejudice against defendants Karen Bruton, Kenneth Klein, Bradford Lambert, Rolf Nordstrom, Richard Riccobono, Frederick Teed, Vincent Fazzio, and Jennifer Gant.

**SO RECOMMENDED** on this 9th day of June 2004.

IRMA CARRILLO RAMIREZ

UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings [*50] and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ

UNITED STATES MAGISTRATE JUDGE

# Exhibit 3

LEXSEE

**BRIAN ANTHONY DAVIS, Plaintiff, VS. EDWIN V. KING, et al., Defendants.**

Civil Action No. 3:99-CV-1280-D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
TEXAS, DALLAS DIVISION

2000 U.S. Dist. LEXIS 5366

April 24, 2000, Decided
April 24, 2000, Filed; April 25, 2000, Entered on Docket

**DISPOSITION:** [*1] McBride's March 14, 2000 re-
newed motion to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant prosecutor
moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss
plaintiff inmate's amended complaint, alleging constitu-
tional violations under Bivens standard.

**OVERVIEW:** Plaintiff alleged that the Government
offered him a 10-year sentence in exchange for a guilty
plea and his cooperation, that he advised his counsel that
he wished to accept the offer, but that his counsel unilat-
erally proceeded to trial over his objection. Plaintiff al-
leged that when he sought collateral relief on the basis
that his trial attorneys were ineffective for rejecting the
10-year deal and proceeding to trial, the Government
responded by producing a written statement that showed
that plaintiff was the one who decided to reject the Gov-
ernment's offer and to stand trial. Plaintiff alleged that
the document was a forgery fabricated by the defendants,
including defendant prosecutor. Plaintiff sued his trial
attorneys, habeas counsel, and defendant prosecutor who
moved to dismiss the amended complaint against him.
The court granted defendant's motion, finding that plain-
tiff failed to plead a conspiracy claim based on specific
factual allegations.

**OUTCOME:** The court granted defendant's renewed
motion to dismiss. Plaintiff's amended complaint failed
to plead a conspiracy claim based on specific factual
allegations.

**CORE TERMS:** conspiracy, prosecutor, plead, written
statement, conspired, sentence, absolute immunity, pre-
senting, conclusory, fabricated evidence, renewed mo-
tion, court denied, destroyed, ten-year, immune, forge

LexisNexis(R) Headnotes

*Criminal Law & Procedure > Criminal Offenses > In-
choate Crimes > Conspiracy > Elements*
*Torts > Procedure > Multiple Defendants > Concerted
Action > Civil Conspiracy > General Overview*
[HN1] Plaintiffs who advance conspiracy claims must
plead specific facts, not merely conclusory allegations.
Bald allegations that a conspiracy existed are insuffi-
cient.

*Torts > Public Entity Liability > Immunity > Judicial
Immunity*
[HN2] In initiating prosecution and presenting state's
case, prosecutor is immune from civil suit for damages
under 42 U.S.C. S. § 1983. Prosecutor's absolute immu-
nity from § 1983 liability will not be stripped because of
action that was in error, was done maliciously, or was in
excess of his authority, rather, he will be subject to liabil-
ity only when he has acted in the clear absence of all
jurisdiction.

**COUNSEL:** BRIAN ANTHONY DAVIS, plaintiff, Pro
se, Bradford, PA.

For EDWIN V KING, defendant: Douglas H Parks, At-
torney at Law, Law Office of Douglas H Parks, Dallas,
TX.

For ROY LEE STACY, defendant: David Wayne Elrod,
Attorney at Law, Calhoun & Stacy, Dallas, TX USA.

ROY LEE STACY, defendant, Pro se, Dallas, TX USA.

LAWRENCE B MITCHELL, defendant, Pro se, Dallas, TX USA.

For MARK D MCBRIDE, defendant: D Shane Read, Attorney at Law, US Attorney's Office, Department of Justice, Dallas, TX USA.

**JUDGES:** SIDNEY A. FITZWATER, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** SIDNEY A. FITZWATER

**OPINION:**

MEMORANDUM OPINION AND ORDER

Defendant Mark D. McBride, Esq. ("McBride") moves pursuant to Fed. R. Civ. P. 12(b)(6) n1 to dismiss this *Bivens* n2 action by plaintiff Brian Anthony Davis ("Davis"). For the reasons that follow, the court grants the motion.

> n1 McBride also seeks dismissal under Rule 12(b)(1), but the court discerns no basis to question its subject matter jurisdiction.

> n2 *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971).

[*2]

I

Davis sues defendants Edwin King ("King"), n3 Roy Lee Stacy, Esq. ("Stacy"), Lawrence Mitchell, Esq. ("Mitchell"), and McBride, alleging constitutional violations remediable under Bivens. Davis was tried and convicted of multiple federal drug offenses. The court later sentenced him to life in prison.

> n3 King is now a state judge. Because he was an attorney in private practice when he represented Davis, the court will refer to him as "King" rather than as "Judge King."

Stacy and King served as Davis' trial counsel. The court appointed Stacy to represent Davis; Stacy, in turn, hired King. McBride, an Assistant United States Attorney, prosecuted the case. Mitchell was Davis' retained habeas counsel. Davis alleges that he went to trial despite his desire to accept a plea offer that would have entailed a sentence much more favorable than life imprisonment. He avers that the government offered him a ten-year sentence in exchange for a guilty plea and his cooperation,

that he advised his counsel that he wished to [*3] accept the offer, but that his counsel unilaterally proceeded to trial over his objection.

After Davis' conviction and sentence were affirmed on direct appeal, *see United States v. Stevens*, 56 F.3d 1386 (5th Cir. 1995) (unpublished opinion), he filed a motion to vacate sentence, pursuant to 28 U.S.C. § 2255. The present lawsuit stems from that habeas proceeding. Davis alleges that when he sought collateral relief on the basis that his trial attorneys were ineffective for rejecting the ten-year deal and proceeding to trial, the government responded by producing a written statement that showed that Davis was the one who decided to reject the government's offer and to stand trial. Davis alleges that the document is a forgery fabricated by the defendants, including McBride. n4

> n4 The court denied habeas relief. Davis appealed the court's decision, and the Fifth Circuit denied a certificate of appealability on March 29, 2000. *See United States v. Davis*, No. 99-11104 (5th Cir. Mar. 29, 2000) (order) (per Smith, J.).

[*4]

Davis sues his trial attorneys, habeas counsel, and the prosecutor. He alleges that defendants conspired to violate his civil rights by forging the written statement, contends that Mitchell refused to challenge the authenticity of the statement, forcing Davis to proceed with his § 2255 motion pro se, and asserts that defendants destroyed the statement and represented to the magistrate judge that the statement had "disappeared." Davis seeks $ 1 million in damages from each defendant.

McBride moved to dismiss Davis' complaint on several grounds. The court referred the motion to the magistrate judge, who recommended dismissing the case against McBride. The court declined to adopt the recommendation. It concluded that the magistrate judge had only addressed the issue of absolute immunity and held that Davis did not appear to be complaining only about McBride's use of fabricated evidence in the habeas proceeding. The court held that Davis arguably seeks relief based on McBride's alleged participation in a conspiracy to fabricate the written statement. Applying a functional approach to McBride's role as a prosecutor, the court concluded that it could not say on the basis of the complaint [*5] alone that McBride is absolutely immune. The court reasoned that although prosecutorial immunity is broad and applies even if the prosecutor is accused of knowingly using perjured testimony, there is a material difference between a prosecutor's knowing use of fabricated evidence as an advocate and a prosecutor's fabrication of evidence while acting outside that role.

The court agreed with McBride, however, that Davis had not adequately pleaded a conspiracy. The court held that Davis must plead specific operative facts upon which his claim is based. Bald allegations that a conspiracy existed are insufficient. The court concluded that Davis' complaint did little more than allege that McBride was a participant in a conspiracy to forge the written statement in question. Accordingly, although the court denied McBride's motion to dismiss, it ordered Davis to file an amended complaint that pleads a conspiracy based on specific factual allegations.

Davis filed his amended complaint on March 6, 2000. McBride filed a renewed motion to dismiss on March 14, 2000.

II

McBride argues that Davis has failed to state a claim upon which relief can be granted. He contends that Davis' amended complaint [*6] fails to plead a conspiracy based on specific factual allegations. The court agrees.

[HN1] Plaintiffs who advance conspiracy claims must plead specific facts, not merely conclusory allegations. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Lynch v. Cannatella*, 810 F.2d 1363, 1371 (5th Cir. 1987). Bald allegations that a conspiracy existed are insufficient. *Lynch*, 810 F.2d at 1371. Davis' amended complaint fails to allege specific facts. He merely avers that "defendant McBride conspired and agreed with defendants King, Stacy and Mitchell to forge the 'note.'" Am. Compl. P 17. He alleges that "because of plaintiff's persistent request for handwriting examination of the note, defendants McBride, King, Stacy and Mitchell conspired and agreed to keep plaintiff incarcerated for the duration of his life and deprive plaintiff from receiving the 10-year plea offered." *Id.* at P 25. Davis asserts that during an *ex parte* hearing, defendants lied to the magistrate judge and stated that the note was now missing. *Id.* He contends that defendants destroyed the note. These allegations are insufficient to plead conspiracy. *See, e.g., Young*, 938 F.2d at 569 [*7] (holding that plaintiff's conclusory assertions that attorneys conspired to rig jury lacked specific facts necessary to state conspiracy claim). Davis' assertion that "defendants McBride, King, Stacy and Mitchell conspired to violate plaintiff's constitutional right . . . because plaintiff is a black male," Am Compl. P 27, is similarly flawed, because it contains no specific facts that support his conclusory allegation.

Davis also maintains that McBride attached a copy of the allegedly forged written statement to the government's response to his § 2255 motion, *id.* at P 18, and that McBride moved to strike the statement from the record, *id.* at P 26. These allegations are not sufficient to plead conspiracy. Moreover, McBride is entitled to absolute immunity in presenting the government's case. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 431, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976) (holding that [HN2] in initiating prosecution and presenting state's case, prosecutor is immune from civil suit for damages under <u>42 U.S.C. § 1983</u>); *Kerr v. Lyford*, 171 F.3d 330, 337 (5th Cir. 1999) (holding that prosecutor's absolute immunity from [*8] § 1983 liability "will not be stripped because of action that 'was in error, was done maliciously, or was in excess of his authority, rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction'") (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978)).

Accordingly, the court grants McBride's March 14, 2000 renewed motion to dismiss and dismisses this action against him with prejudice by Rule 54(b) judgment filed today.

**SO ORDERED.**

April 24, 2000.

SIDNEY A. FITZWATER

UNITED STATES DISTRICT JUDGE

# Exhibit 4

LEXSEE

**MICHAEL EVANS, Plaintiff, v. CITY OF CHICAGO, Present and Former Chicago Police Officers ANTHONY KATALINIC, FRED HILL, WILLIAM MOSHER, JOHN McCABE, THOMAS McKENNA, DENNIS BANAHAN, JOSEPH DiLEONARDI, JOHN GRIFFITH, RICHARD O'CONNELL, PAUL NEALIS, PETER DIGNAN, THOMAS FERRY, PATRICK McGROARTY, JOSEPH DiGIACOMO, ROY MARTIN, EDWARD LERACZ, DANIEL SWICK, and JOHN RYAN, Defendant.**

No. 04 C 3570

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

231 F.R.D. 302; 2005 U.S. Dist. LEXIS 18507

**August 29, 2005, Decided**
**August 29, 2005, Filed**

**SUBSEQUENT HISTORY:** Summary judgment denied by, Motion to strike denied by Evans v. City of Chi., 2006 U.S. Dist. LEXIS 9831 (N.D. Ill., Jan. 6, 2006)

**PRIOR HISTORY:** Evans v. City of Chicago, 2004 U.S. Dist. LEXIS 28511 (N.D. Ill., Nov. 30, 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants, a city and 18 current and former police officers, under 42 U.S.C.S. § 1983 for, inter alia, coercion of a confession, failure to intervene, due process and Sixth Amendment violations, and denial of access to the courts; plaintiff also brought conspiracy claims under § 1983 and 42 U.S.C.S. § 1985(3). Defendants moved to dismiss certain claims.

**OVERVIEW:** Plaintiff was convicted of murder and imprisoned for 27 years until his conviction was vacated as a result of DNA testing. He claimed that the police officers manufactured evidence and coerced witnesses to falsely implicate him and that the officers disregarded or destroyed exculpatory evidence. The court found that a claim that officers had coerced plaintiff to confess in 1976 was time barred; success on the claim would not necessarily have implied the invalidity of plaintiff's conviction, so the claim was not tolled under Heck. A Sixth Amendment claim could not be based on denial of counsel during interrogation. Claims of failure to intervene and denial of due process did not accrue under Heck until plaintiff was exonerated; possible application of the

complaining witness rule precluded a finding that testifying officers were immune. Plaintiff did not establish that defendants' actions caused him to forfeit a cause of action or remedy, so his access to courts claim failed. The intra-corporate conspiracy doctrine did not bar plaintiff's conspiracy claims given allegations of a broad discriminatory pattern and the possibility that the officers acted for reasons of personal bias.

**OUTCOME:** Defendants' motions to dismiss were granted as to the coerced confession claim, the Sixth Amendment claim, and the access to courts claim; the motions were otherwise denied.

**CORE TERMS:** conspiracy, misconduct, right to counsel, confession, statute of limitations, coerced confession, intra-corporate, intervene, police officers, coerced, murder, invalidity, interrogation, exculpatory, prosecutor, withheld, constitutional rights, motion to dismiss, conspiracy claim, fair trial, discriminatory, plead, exculpatory evidence, motions to dismiss, clarify, testing, time-barred, sentence, malicious prosecution, state law

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] For the purposes of a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. Thus, the court will dismiss a complaint under

Fed. R. Civ. P. 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Any ambiguities are construed in favor of the plaintiff.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Civil Rights Law > Section 1983 Actions > Scope*
[HN2] The liberal notice pleading standard of federal practice applies to civil rights claims brought under 42 U.S.C.S. § 1983. However, the court need not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
[HN3] The statute of limitations is an affirmative defense that a plaintiff need not anticipate or attempt to address in a complaint.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
[HN4] Because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Fed. R. Civ. P. 12(b)(6). When, however, a plaintiff admits that the applicable limitations period has expired, then the statute of limitations issue may be resolved on its face. But generally, unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.

*Civil Rights Law > Section 1983 Actions > Scope*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN5] The appropriate statute of limitations for a 42 U.S.C.S. § 1983 claim is the limitations period for personal injury claims in the state where the alleged constitutional violation occurred.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN6] Illinois has a two year statute of limitations for personal injury claims.

*Civil Rights Law > Section 1983 Actions > Scope*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN7] For statute of limitations purposes, federal law determines when a 42 U.S.C.S. § 1983 action accrues.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Governments > Legislation > Statutes of Limitations > Tolling*
*Torts > Intentional Torts > False Imprisonment > Defenses > Statutes of Limitations*
[HN8] If a judgment for plaintiff on his 42 U.S.C.S. § 1983 claims would necessarily imply the invalidity of his conviction or sentence, the statute of limitations does not begin to run until that conviction or sentence has been terminated in the plaintiff's favor. Thus, if a § 1983 claimant wishes to toll the statute of limitations, he or she first must prove that the conviction or sentence has been has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A damages claim that necessarily demonstrates the invalidity of a conviction may not be brought while the conviction stands. A claim based on wrongful conviction and imprisonment does not accrue until a pardon.

*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > General Overview*
*Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > Definitions*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN9] Because the harmless error doctrine applies to coerced confessions, a judgment in favor of a plaintiff on a 42 U.S.C.S. § 1983 claim arising from an allegedly coerced confession will not necessarily imply the invalidity of his conviction.

*Criminal Law & Procedure > Accusatory Instruments > Indictments*
*Criminal Law & Procedure > Preliminary Proceedings > Preliminary Hearings > Procedure & Scope*

231 F.R.D. 302; 2005 U.S. Dist. LEXIS 18507, *

*Criminal Law & Procedure > Counsel > Right to Counsel > General Overview*
[HN10] The Sixth Amendment right to counsel only attaches once the initiation of adversarial criminal proceedings. Adversarial proceedings include formal charges, indictment, information, arraignment, and preliminary hearings. A station house detention and interrogation does not trigger a Sixth Amendment right to counsel.

*Civil Rights Law > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN11] While a claim for failure to intervene to prevent violations of a plaintiff's constitutional rights generally should be brought immediately because the injury is compensable even in the face of a subsequent conviction, the Heck accrual rule ultimately determines the claim's validity. Thus, a court must determine whether success on the plaintiff's claim would necessarily imply the invalidity of his conviction. To do so, the court must first determine what conduct underlies the failure to intervene claim.

*Criminal Law & Procedure > Discovery & Inspection > Brady Materials*
*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN12] A plaintiff has a due process claim in the original sense of that phrase where he claims that he did not receive a fair trial because the prosecutors withheld material exculpatory details. In addition, a prosecutor is responsible for learning of and disclosing all exculpatory evidence known to the police. A claim along these lines is a genuine constitutional tort.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Rights Law > Immunity From Liability > Court Personnel & Judges*
[HN13] Law enforcement officials are absolutely immune against claims of false or perjured testimony even when that testimony allegedly deprived a party of his right to a fair trial. An exception to the absolute immunity rule exists, however, for so-called complaining witnesses. A "complaining witness" is defined as one who actively instigated or encouraged the prosecution of the plaintiff. The determination of who is a complaining witness is a question of fact and thus, should not be resolved on a motion to dismiss.

*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition*
[HN14] Access to courts claims fall into two categories. The first category includes "systemic official action" claims, in which official action prevents a plaintiff from preparing or filing a lawsuit at the present time. In the second category are claims arising from official acts that allegedly have caused a plaintiff to lose or inadequately settle an otherwise meritorious case; to lose an opportunity to sue; or to lose an opportunity to seek a particular form of relief.

*Civil Procedure > Judgments > General Overview*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition*
[HN15] The ultimate object of the backward looking category of access to courts claims is not judgment in a future lawsuit but simply judgment in the access claim itself. In order to properly plead an access to courts claim, a plaintiff must show that he lost or was otherwise unable to maintain a specific legal remedy. When the claim is backward looking, the plaintiff must describe the underlying cause of action in the complaint and also must identify a remedy that may be awarded as recompense but is not otherwise available in some suit that may yet be brought.

*Civil Rights Law > Conspiracy > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
[HN16] The intra-corporate conspiracy doctrine holds that employees and managers of a corporation, who are jointly pursuing its lawful business, are not considered to be conspirators when acts that fall within the scope of their employment are said to be discriminatory or retaliatory.

*Civil Rights Law > Conspiracy > General Overview*
[HN17] Large bureaucratic agencies are functionally the equivalent of corporations in that their employees and officials jointly endeavor to provide a product or service and reach decisions pursuant to a unified, hierarchical structure, and thus the intra-corporate conspiracy doctrine applies to individual members of an agency. But the doctrine's bar against 42 U.S.C.S. § 1985 claims is not absolute. In sum, except in egregious circumstances, intra-entity discussions that result in discriminatory or retaliatory actions lie outside the scope of § 1985.

*Civil Rights Law > Conspiracy > General Overview*

Case 4:05-cv-03646   Document 77-1   Filed in TXSD on 06/07/06   Page 47 of 47

231 F.R.D. 302; 2005 U.S. Dist. LEXIS 18507, *

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > General Overview*
[HN18] The United States Court of Appeals for the Seventh Circuit has recognized two exceptions to the intracorporate conspiracy doctrine. One exception applies when plaintiff shows that the employees were motivated by personal bias. In such an instance, the interests of the corporation would have played no part in the employees' collective action, so the action could not have been taken within the scope of employment. The second exception applies when the conspiracy was part of some broader discriminatory pattern or when it in any way permeated the ranks of the organization's employees. Although the Seventh Circuit has not defined the "broader discriminatory pattern" exception, it has identified relevant factors to consider, including the number of agents involved, the number of acts involved, and the nature and scope of the conspiracy itself.

*Civil Rights Law > Conspiracy > General Overview*
*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > General Overview*
[HN19] The United States Court of Appeals for the Seventh Circuit has not determined whether the intracorporate conspiracy doctrine applies to 42 U.S.C.S. § 1983 conspiracy claims. Indeed, there is a split between courts in the Northern District of Illinois on the applicability of the doctrine to such claims. Several judges have refused to apply the doctrine to cases involving allegations of police misconduct. The intra-corporate conspiracy doctrine has been developed to shield corporations and their employees from liability for routine, collaborative business decisions. Framing a plaintiff for a crime does not qualify as routine police department decisionmaking.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN20] A court does not favor motions to strike unless it is clear that the matter at issue has no bearing on the litigation.

**COUNSEL:** [*1] For Michael Evans, Plaintiff: Jonathan I. Loevy, Amanda Antholt, Arthur R. Loevy, Jonathan A. Rosenblatt, Loevy & Loevy, Chicago, IL; Karen L Daniel, Lawrence Charles Marshall, Northwestern University School Of Law, Legal Clinic, Chicago, IL; Locke E. Bowman, III, MacArthur Justice Center, Chicago, IL.

For City of Chicago, Present and Former Chicago Police Officers, Defendant: Christina Coleen Frenzel, Cook County State's Attorneys Office, Chicago, IL; Daniel Matthew Noland, Harry N. Arger, Paul A. Michalik, Terrence Michael Burns, Dykema Gossett Rooks Pitts PLLC, Chicago, IL.

For Anthony Katalinic, Fred - Hill, Thomas McKenna, Dennis Banahan, Dawn Eileen Bode, Joseph DiLeonardi, Richard O'Connell, Paul Nealis, Peter Dignan, Thomas Ferry, Patrick McGroarty, Joseph DiGiacomo, Edward Leracz, and other As-Yet-Unknown, Defendants: Kevin William Horan, Andrew M. Hale, John Joseph Rock, Rock Fusco LLC, Chicago, IL; Silvia Mercado Masters, Rock, Fusco & Garvey, Chicago, IL.

**JUDGES:** HONORABLE DAVID H. COAR.

**OPINIONBY:** David H. Coar

**OPINION:**

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Evans ("Evans") filed this fourteen-count amended complaint alleging various federal and state law [*2] claims against the City of Chicago and eighteen current and former members of the Chicago Police Department (collectively, "Defendants"). Presently before this Court are Defendants' motions to dismiss. For the reasons stated below, Defendants' motions are granted in part and denied in part.

## I. BACKGROUND

At this stage of the proceedings, all well-pled facts are taken as true. On January 14, 1976, a nine-year-old girl named Lisa Cabassa disappeared while walking in her neighborhood on Chicago's southeast side. Her body was found later that night in an alley several miles away from where she had been last seen. She had been raped and murdered.

At the time, Plaintiff Michael Evans was a seventeen-year-old high school student at Bowen High School in Chicago, with no criminal record or any prior involvement with the criminal justice system. He lived with his parents and siblings and spent his free time playing the clarinet. He also played baseball and basketball.

The Chicago Police Department ("CPD") investigation of the Cabassa murder was led by Defendant DiLeonardi, a Chicago Police Commander, and Defendant Griffith, a Chicago Police Lieutenant and the commanding officer [*3] of the Chicago Police Area 2 Homicide/Sex Unit ("Area 2"). Defendants O'Connell, Ferry, and McGroarty were Chicago Police Sergeants assigned to Area 2, under the direct supervision and command of Defendants DiLeonardi and Griffith. Defendants Katalanic, Hill, McCabe, Mosher, McKenna, Dignan, DiGia-